**KALIELGOLD PLLC**
Sophia Gold (SBN 307971)
950 Gilman Street, Suite 200
Berkeley, California 94710
Telephone: (202) 350-4783
sgold@kalielgold.com

**KALIELGOLD PLLC**
Jeffrey D. Kaliel (SBN 238293)
Amanda J. Rosenberg (278507)
1100 15th Street, NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783
jkaliel@kalielpllc.com
arosenberg@kalielgold.com

*Attorneys for Plaintiff and the Proposed Classes*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| ANDREW KING, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> NAVY FEDERAL CREDIT UNION and DOES 1-50, inclusive <br><br> Defendants. | Case No: 2:23-cv-05915-SPG-AGR <br><br> Hon. Sherilyn Peace Garnett <br><br> **AMENDED CLASS ACTION COMPLAINT** <br><br> **[DEMAND FOR JURY TRIAL]** |

Plaintiff Andrew King ("Plaintiff"), on behalf of himself and all persons similarly situated, allege the following based on personal knowledge as to allegations regarding the Plaintiff and on information and belief as to other allegations.

## INTRODUCTION

1. Plaintiff brings this action on behalf of himself and classes of all similarly situated consumers against Defendant Navy Federal Credit Union ("NFCU"). In violation of state consumer protection law, NFCU unfairly, deceptively, and unlawfully charges accountholders so-called "Returned checks, deposited or cashed" fees ("Returned Checks, Deposited or Cashed Fees") on deposits that accountholders attempt to make into their NFCU accounts, but which fail because they could not be processed against the originator's account. In violation of its own adhesion contract, NFCU charges accountholders such Returned Checks, Deposited or Cashed Fees even where no funds were ever made available on an account.

2. Plaintiff and similarly situated accountholders are shocked when they are assessed hefty Returned Checks, Deposited or Cashed Fees after attempting but failing to make a deposit into their accounts or attempting but failing to cash checks.

3. NFCU's practice is unlawful, unfair, deceptive and in violation of state consumer protection law because Plaintiff and the putative class members have no control whatsoever over whether the item attempted for deposit would be returned. Nor can the attempted depositor verify with the check originator's depository institution prior to depositing an item whether there are sufficient funds in the issuer's account for it to clear. Moreover, consumers like Plaintiff reasonably understand they will only be assessed Returned Checks, Deposited or Cashed Fees when they are actually provided and use the funds attempted for deposit and those actually deposited and actually used funds are later reversed—not when attempted deposits are never made available or used by accountholders in the first place.

4. NFCU's fee assessment practice is also in breach of NFCU's own

adhesion contract because that contract only authorizes NFCU to assess Returned Checks, Deposited or Cashed Fees (and in some cases, Overdraft Fees) where it has actually cashed or deposited funds into an account, where accountholders have actually used such funds, and where NFCU must then attempt to recoup already-used funds. However, NFCU routinely charges such fees even where it has not made deposited funds available to accountholders and such funds have not been used by accountholders for any purpose. In such cases, the supposed "return" of a deposit or reversal of funds deposited into an account are purely hypothetical.

5. In sum, and as explained in detail below, NFCU never represented to its accountholders that it would charge Returned Checks, Deposited or Cashed Fees whenever they *attempted* to make a deposit that failed, but instead promised such fees would be assessed only when an item attempted for deposit actually was cashed successfully or funds were deposited, used by the accountholder, and then later needed to be recouped by the Credit Union. Indeed, NFCU calls the fee at issue a Returned Checks, Deposited or Cashed Fee, not a "Cashing *Attempt* or Deposit *Attempt* Fee."

6. Plaintiff, on behalf of himself and the Class (defined below), seeks to end NFCU's deceptive practices and force it to refund improper Returned Checks, Deposited or Cashed Fees. Plaintiff seeks damages, restitution, and injunctive relief, as set forth more fully below.

**PARTIES**

7. Plaintiff, Andrew King, resides in Long Beach, California and holds an NFCU checking account.

8. Defendant NFCU is engaged in the business of providing retail banking services to consumers and businesses, including to Plaintiff and members of the putative Classes, which includes the issuance of debit cards for use by its customers in conjunction with their checking accounts. NFCU operates banking centers, and thus

conducts business, throughout the State of California. Its headquarters are in Vienna, Virginia.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the class is a citizen of a different state than Navy Federal Credit Union. The number of members of the proposed Class in aggregate exceeds 100 consumers. 28 U.S.C. § 1332(d)(5)(B).

10. The Court has personal jurisdiction over the Navy Federal Credit Union because it regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and/or services provided to persons in this district.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Navy Federal Credit Union is deemed to reside in any judicial district in which they are subject to personal jurisdiction and substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### A. NFCU Unfairly, Unlawfully and Deceptively Charges "Junk Fees" in the Form of Returned Checks, Deposited or Cashed Fees

12. NFCU's accountholders are routinely charged Returned Checks, Deposited or Cashed Fees on attempted deposits into their checking account that are returned unpaid because the deposit could not be processed against the originator's account. This occurs even when an attempted deposit never results in the accountholder accessing or having access to the amount of the attempted deposit—in other words, where no "deposit" actually occurs.

13. There are many reasons items attempted for deposit or cashing can be

returned unprocessed. For example, an originator may not have sufficient funds available in their account to pay the amount stated on the check; an originator may have directed the issuing depository institution to stop payment; the account referenced on the check may be closed or located in a foreign country; or there may be questionable, erroneous, or missing information on the check, including with respect to the signature, date, account number, or payee name.

14. Importantly, consumers like Plaintiff who attempt deposits or check cashing have no control over whether, and no reason to anticipate that, the attempted deposit or cashing would be returned. Nor can the depositor verify with the originator's depository institution prior to depositing an item whether there are sufficient funds in the issuer's account for the item to clear.

15. In other words, accountholders have absolutely no control over whether the deposits or check cashing they attempt with be returned unpaid—and no control over whether will be assessed Returned Checks, Deposited or Cashed Fees by NFCU.

16. In its October 2022 Bulletin, The Consumer Financial Protection Bureau called this type of blanket policy used by NFCU here "unfair":

> Blanket policies of charging Returned Deposited Item fees to consumers for all returned transactions irrespective of the circumstances of the transaction or patterns of behavior on the account are likely unfair.
>
> Fees charged for Returned Deposited Items cause substantial injury to consumers. Under the blanket policies of many depository institutions, Returned Deposited Item fees cause monetary injury, in the range of $10-19 for each returned item. *Depository institutions that charge Returned Deposited Item fees for returned checks impose concrete monetary harm on a large number of customers*.
>
> In many of the instances in which Returned Deposited Item fees are charged, consumers would not be able to reasonably avoid the substantial monetary injury imposed by the fees. *An injury is not reasonably avoidable unless consumers are fully informed of the risk and have practical means to avoid it*. Under blanket policies of many depository institutions, Returned Deposited Item fees are charged whenever a check

5
AMENDED CLASS ACTION COMPLAINT

is returned because the check originator has insufficient available funds in their account, the check originator instructs the originating depository institution to stop payment, or the check is written against a closed account. But *a consumer depositing a check would normally be unaware of and have little to no control over whether a check originator has funds in their account, will issue a stop payment instruction, or has closed the account*. Nor would a consumer normally be able to verify whether a check will clear with the check originator's depository institution before depositing the check or be able to pass along the cost of the fee to the check originator.

Ex. A, *Bulletin 2022*-06, at pp. 3-4 (emphasis added).[1]

17. Indeed, the CFPB explicitly stated it would be considered unfair under the Consumer Financial Protection Act for financial institutions like NFCU to charge "Returned Deposited Item Fees to consumer for all returned transactions irrespective of the circumstances of the transaction or patterns of behavior on the account[.]" *See* Ex. A. And yet, NFCU does exactly that.

18. For the same reasons the CFPB has deemed the charging of Returned Deposited Item fees to be "unfair" under the Consumer Financial Protection Act, the same is true under state consumer protection law, which similarly bans unfair business practices.

19. Even worse, NFCU has a blanket policy of charging $15 Returned Checks, Deposited or Cashed Fees on *attempted* deposits or *attempted* check cashing, even where *no actual deposit or check cashing took place*.

20. This, too, is misleading. Indeed, NFCU itself named the relevant fee a Returned Checks, Deposited or Cashed Fee, which reasonably indicates that such a fee will only be assessed by the Credit Union where an item is *successfully* cashed so funds

---

[1] *Bulletin 2022-06: Unfair Returned Deposited Item Fee Assessment Practices*, Bureau of Consumer Financial Protection Bulletin, applicable as of November 7, 2022, available at https://www.federalregister.gov/documents/2022/11/07/2022-23933/bulletin-2022-06-unfair-returned-deposited-item-fee-assessment-practices (last accessed March 21, 2023).

can be used by an accountholder. Instead, the fee is charged to accountholders even when NFCU incurs no loss from the returned transaction and indeed does not even make the funds available to accountholders at all, meaning NFCU has no need to try to recoup such amounts.

21. "Returned checks, deposited or cashed" as those terms appear in NFCU's Fee Schedule reasonably refer to the circumstances in which a deposit is successfully performed, such that an accountholder is provided the funds deposited for use. In financial industry terms, and according to the Farlex Financial Dictionary, "cashed" means "to deposit a check at a bank or other institution and to receive cash in exchange." "Deposited" analogously means to deposit an item and to receive use of the funds deposited in exchange. But as alleged herein, NFCU as a matter of policy assesses Returned Checks, Deposited or Cashed Fees even where no cash has been received by an accountholder and even where no funds have been provided for use by the accountholder.

22. In short, "cashed" or "deposited" as used in the Fee Schedule does not and cannot reasonably mean that NFCU may assess a fee when it merely accepts and tries to effectuate a deposit at a later time, nor can it reasonably mean a mere notation in a system or on a bank statement that NFCU is considering whether to not make funds available as some future time.

23. It is unfair and deceptive to charge mis-named Returned Checks, Deposited or Cashed Fees even where no "cashing" or "deposit" has occurred. The fee is not, after all, called an *Attempted* Cashed or *Attempted* Deposited Returned Check Fee.

**B.  NFCU Breaches Its Adhesion Contract When It Assesses Returned Checks, Deposited or Cashed Fees on Deposits That Never Occurred**

24. When a deposit is attempted by an accountholder, funds may be provided by the Credit Union immediately in the form of cash or immediately in the form of electronic access to the deposited amount, both subject to later verification of the

7
AMENDED CLASS ACTION COMPLAINT

validity of the deposit. On the other hand, in other cases and at the discretion of the Credit Union, no cash will be provided for the attempted deposit and no funds will be made available immediately in the form of electronic access to the deposited amount, while the Credit Union attempts to verify the validity of the attempted deposit. These provide two very different paths when a determination is made by the Credit Union that an attempted deposit must be returned.

25. In the former path (when cash or electronic access is provided immediately), the return of a deposit causes real risk for the Credit Union. Having already provided cash or allowed the accountholder to use funds deposited, the Credit Union must attempt to recoup those funds and must debit funds from the account to ensure they can no longer be spent. Debiting those funds may cause an overdraft on the account.

26. In the latter path (where no cash was provided for use by the accountholder) it is far different. Having never provided cash or provided an increase in funds that an accountholder can use, the Credit Union need not attempt to recoup any funds and need not attempt to debit funds from an account to ensure they can no longer be spent. It need only make a bookkeeping notation in its records that funds will not be provided for use in the future as a result of the attempted deposit.

27. According to the NFCU Deposit Agreement, **Ex. B** and the NFCU Fee Schedule, **Ex. C**, NFCU is only authorized by contract to:

> …accept or reject any check presented; revoke any settlement with respect to a check accepted by us, and to charge back to your account the amount of the check based on the return of the check or a receipt of notice of non-payment of the check, or claim a refund for such credit ...

Ex. B, at 10 (emphasis added).

28. However, NFCU's Deposit Agreement never mentions that the Credit Union routinely charges Returned Check Fees, Cash or Deposited, when there is no reversal or debit of funds because the attempted deposit failed.

8
AMENDED CLASS ACTION COMPLAINT

29. The above provision reiterates this fundamental premise—there will be no Returned Checks, Deposited or Cashed Fees assessed where the funds were not actually made available to the accountholder. An amount can only be "revoked" from an account where it has been previously provided. Nor is there any need to "claim a refund for such credit" where no credits were made available in the first place.

30. Worse, NFCU's monthly statements and online banking interfaces are incorrect and misleadingly show attempted deposits being credited for immediate use to accounts, when that is not true and no new funds have been made available.

31. Where there is no cash provided—in other words, where only an *attempted* deposit occurs—NFCU is not authorized by contract to assess a Cashed or Deposited Item Returned Fee.

32. Indeed, the Deposit Agreement makes clear the Credit Union may provide cash to a person depositing a check drawn on another bank—that, in other words, NFCU may "cash" such a check and will retain certain protections when it does so:

> If we cash a check for you that is drawn on another financial institution, we may withhold the availability of a corresponding amount of funds that are already in your account. Those funds will be available on the day they would have been available as though you had deposited the check.

*Id.*, 10.

33. The above provision does not apply and does not provide the Credit Union the ability to "claim a refund for such credit" when no cash was ever provided and no deposit was made in the first place.

34. Lastly, and as described in more detail above, the Fee Schedule, Ex. B, makes the same promise that a Returned Checks, Deposited or Cashed Fee will only be assessed where cash or immediate availability was provided to an accountholder:

> Returned checks, deposited or cashed ………………………… $ 15.00

Ex. C.

9
AMENDED CLASS ACTION COMPLAINT

### C. **Plaintiff's Experience**

35. Plaintiff maintains a personal checking account with NFCU.

36. As an example, in July of 2022, Plaintiff attempted to deposit $38,206.65 into his NFCU account.

37. To Plaintiff's surprise, and by no fault of his own, Plaintiff's attempted deposit failed, and Plaintiff was charged a $15.00 Returned Checks, Deposited or Cashed Fee on August 1, 2022. This fee was unfair, misleading, and unauthorized by the contract.

### D. **Though Unnecessary, Plaintiff Complied with the Notice-And-Cure Provision**

38. Plaintiff complied with the notice-and-cure provision found in NFCU's Deposit Agreement. *See,* Ex. B at 7. Specifically, shortly after incurring the aforementioned fee, Plaintiff called NFCU, twice, to complain about the fee and attempted to receive a refund of the fee. Both times, and only after waiting several hours on hold, NFCU declined to refund the fee. These conversations constituted sufficient notice under the notice-and-cure provision. *See Podwall v. Robinson,* No. 216CV06088ODWAGRX, 2021 WL 4441975, at *3 (C.D. Cal. Sept. 28, 2021) (At summary judgment, declining to dismiss breach of contract claim based on conversation between the Parties because a reasonable jury could find that the plaintiff complied with the notice and cure provision).

39. Moreover, neither Plaintiff nor absent class members were required to comply with the notice-and-cure provision because compliance would serve no practical purpose and would be useless. *Sigwart v. U.S. Bank,* 713 F. App'x 535, 537 (9th Cir. 2017) ("If notice, however, "would ... serve[ ] no practical purpose," a plaintiff is excused from complying with the [notice] provision."). Here, NFCU was already aware of its own, intentional fee assessment practices and would have taken no corrective action even if it had been provided notice. Indeed the futility of notice is demonstrated both by Plaintiff's own experience, in which he requested a refund and

was denied, and by the fact that even after being provided notice by the CFPB that the assessment of such fees is considered "unfair" under federal law, NFCU still failed to refund Plaintiff and class members of the fees at issue. If the CFPB's notice did not spur NFCU to refund the fees, an accountholder's complaint would not either. *Sigwart,* 713 F. App'x at 537 (Holding notice would serve no corrective purpose, and the "law does not require a useless act[.]").

## CLASS ACTION ALLEGATIONS

40. Plaintiff brings this action on behalf of himself and on behalf of all others similarly situated. The Classes includes:

> All NFCU accountholders who, during the applicable statute of limitations through the date of class certification, were charged Returned Checks, Deposited or Cashed Fees on attempted deposits that were returned (National Class).

> All NFCU accountholders in the state of California who, during the applicable statute of limitations through the date of class certification, were charged Returned Checks, Deposited or Cashed Fees on attempted deposits that were returned (California Subclass).

41. Plaintiff reserves the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

42. Excluded from the Class are NFCU, its parents, subsidiaries, affiliates, officers and directors, any entity in which NFCU has a controlling interest, all personal accountholders who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

43. The members of the Class are so numerous that joinder is impractical. The Class consists of at least thousands of members, the identity of whom is within the knowledge of, and can be ascertained only by resort to, NFCU's records.

44. The claims of the representative Plaintiff are typical of the claims of the Class he seeks to represent in that the representative Plaintiff, like all members of the Class, was charged improper and deceptive fees as alleged herein. The representative

Plaintiff, like all members of the Class, was damaged by NFCU's misconduct in that he was assessed deceptive Returned Checks, Deposited or Cashed Fees. Furthermore, the factual basis of NFCU's misconduct is common to all members of the Class and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Class. And NFCU has no unique defenses that would apply to Plaintiff and not the Class.

45. There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual members of the Class.

46. Among the questions of law and fact common to the Class include the following:

    a. Whether NFCU's assessment of Returned Checks, Deposited or Cashed Fees was unfair, deceptive, or misleading;

    b. Whether NFCU's assessment of Returned Checks, Deposited or Cashed Fees was in breach of its contract;

    c. The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

    d. Whether Plaintiff and the Class are entitled to declaratory and injunctive relief and the nature of that relief.

47. Plaintiff' claims are typical of the claims of other members of the Class, in that they arise out of the same wrongful NFCU Returned Checks, Deposited or Cashed Fee policies and practices. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other member of the Class.

48. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, consumer class actions against financial institutions. Accordingly, Plaintiff is adequate representatives and will fairly and adequately protect the interests of the

Class.

49.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual member of the Class claim is small relative to the complexity of the litigation, and due to the financial resources of NFCU, no member of the Class could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the members of the Class will continue to suffer losses and NFCU's misconduct will proceed without remedy.

50.  Even if members of the Class himself could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

51.  Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its treatment as a class action.

52.  NFCU has acted or refused to act on grounds generally applicable to each of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

53.  All conditions precedent to bringing this action have been satisfied and/or waived.

///

///

///

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF
### Breach of Contract, Including Breach of the Implied Covenant
### (On Behalf of Plaintiff and the Classes)

54. Plaintiff incorporates by reference each of the allegations set forth above.

55. Plaintiff and NFCU have contracted for bank account deposit, checking, ATM, and debit card services, as embodied in NFCU's Deposit Agreement and related documentation.

56. No contract provision authorizes NFCU to charge Returned Checks, Deposited or Cashed Fees even on *attempted* deposits even when *no actual deposit took place*.

57. Therefore, NFCU breached the terms of its Account Agreement by charging these fees.

58. Additionally, good faith is an element of every contract pertaining to the assessment of fees. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

59. NFCU has breached the covenant of good faith and fair dealing in the Account Agreement through its policies and practices as alleged herein. Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the Account Agreement.

60. Plaintiff and members of the Class have sustained damages as a result of NFCU's breaches of the account contract.

///

///

**SECOND CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On Behalf of Plaintiff and the California Subclass)**

61. Plaintiff incorporates by reference each of the allegations set forth above.

62. California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice." NFCU's conduct related to deceptively engaging in the practice of charging Returned Checks, Deposited or Cashed Fees on bounced checks, without any fault or control on the part of the consumer violates each of the statutes' "unfair," "unlawful," and "fraudulent" prongs.

63. The UCL imposes strict liability. Plaintiff need not prove that NFCU intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

64. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

65. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

66. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

67. Here, NFCU acted "unlawfully" under the UCL by violating the Consumer Financial Protection Act ("CFPA") and corresponding CFPB guidance interpreting the CFPB, as set forth above.

68. NFCU committed "unfair" and "fraudulent" business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by charging Returned Checks,

15
AMENDED CLASS ACTION COMPLAINT

Deposited or Cashed Fees even on *attempted* deposits or *attempted* check cashing, even where *no actual deposit or check cashing took place*.

69. Defendant's acts and practices offend an established public policy of fee transparency in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

70. The harm to Plaintiff and the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

71. NFCU's business practices have misled Plaintiff and the proposed Class and will continue to mislead them in the future.

72. Plaintiff relied on Defendant's misrepresentations about the Returned Checks, Deposited or Cashed Fees insofar as he did not believe he would be charged such fees even where no actual deposit or check cashing took place.

73. By misrepresenting material facts regarding its fee practices, NFCU deceived Plaintiff and Class members into making banking decisions they otherwise would not make.

74. Had Plaintiff known the truth of the Returned Checks, Deposited or Cashed Fees, *i.e.,* that NFCU's charged such fees even where no actual deposit or check cashing took place, he would have either banked elsewhere or made different banking decisions with respect to cashing checks.

75. As a direct and proximate result of NFCU's unfair, fraudulent, and unlawful practices, Plaintiff and Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and presents a continuing threat to Class members that they will be deceived into depositing checks at NFCU.

76. Plaintiff has no adequate remedy at law.

77. As a result of its unfair, fraudulent, and unlawful conduct, NFCU has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class demand a jury trial on all claims so triable and judgment as follows:

1. Declaring NFCU's Returned Checks, Deposited or Cashed Fees policies and practices to be wrongful, unfair, and unconscionable;

2. Restitution of all Returned Checks, Deposited or Cashed Fees paid to NFCU by Plaintiff and the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

3. Disgorgement of the ill-gotten gains derived by NFCU from its misconduct;

4. Actual damages in an amount according to proof;

5. Pre-judgment interest at the maximum rate permitted by applicable law;

6. Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

7. Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Complaint that are so triable as a matter of right.

Dated: November 2, 2023        **KALIELGOLD. PLLC**

By: /s/ Sophia Goren Gold
JEFFREY D. KALIEL
SOPHIA G. GOLD
AMANDA J. ROSENBERG

*Attorneys for Plaintiff and the Putative Classes*

17
AMENDED CLASS ACTION COMPLAINT

Case 2:23-cv-05915-SPG-AGR   Document 20   Filed 11/02/23   Page 18 of 19   Page ID #:259

18
AMENDED CLASS ACTION COMPLAINT

# CERTIFICATE OF SERVICE

I am employed in the state of California. I am over the age of 18 and not a party to the within action. My business address is 950 Gilman Street, Suite 200, Berkeley, California 94710.

On October 11, 2023, the following document was served and described as:

**JOINT INITIAL STATUS CONFERENCE STATEMENT**

on the interested parties in this action by sending [ ] the original [or] [✓] a true copy thereof [✓] to interested parties as follows [or] [ ] as stated on the attached service list:

| | |
|---|---|
| **HUNTON ANDREWS KURTH LLP**<br>Jason J. Kim<br>Hakop Stepanyan<br>Marcus E. Nelson<br>550 South Hope Street, Suite 2000<br>Los Angeles, California 90071-2627<br>Telephone: (213) 532-2000<br>kimj@huntonak.com<br>hstepanyan@huntonak.com<br>mnelson@huntonak.com | Attorneys for Defendant<br>**Navy Federal Credit Union** |

[X]   **BY ELECTRONIC SERVICE:** by causing a true and correct copy thereof to be transmitted electronically to the attorney(s) of record in this action via the Court's CM/ECF system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this November 2, 2023, at Los Angeles, California.

*/s/ Sophia Goren Gold*
Sophia Goren Gold