Jason J. Kim (State Bar No. 221476)
kimj@HuntonAK.com
Hakop Stepanyan (State Bar No. 296782)
hstepanyan@HuntonAK.com
Marcus E. Nelson (State Bar No. 347650)
mnelson@HuntonAK.com
**HUNTON ANDREWS KURTH LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone:  (213) 532-2000
Facsimile:  (213) 532-2020

Attorneys for Defendant
NAVY FEDERAL CREDIT UNION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| ANDREW KING, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>NAVY FEDERAL CREDIT UNION and DOES 1-50, inclusive,<br><br>    Defendants. | Case No.:  2:23−cv−05915 SPG (AGRx)<br><br>Hon. Sherilyn Peace Garnett<br><br>**DEFENDANT NAVY FEDERAL CREDIT UNION'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>*[Request for Judicial Notice and Declaration of Hakop Stepanyan filed concurrently herewith]*<br><br>Date:      December 20, 2023<br>Time:     1:30 p.m.<br>Crtm:    5C<br><br>Complaint Filed:   June 21, 2023<br>Date of Removal:  July 21, 2023<br>FAC Filed:            November 2, 2023 |

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on December 20, 2023 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5C of the above-entitled Court located at 350 West 1st Street, Los Angeles, CA 90012, Defendant Navy Federal Credit Union ("Navy Federal") will, and hereby does, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, move this Court for an order dismissing this lawsuit in its entirety.

This motion is based on Plaintiff's failure to state a claim upon which relief can be granted with regard to his First Claim for Relief (breach of contract, including breach of the implied covenant of good faith and fair dealing) and his Second Claim for Relief (violation of California's Unfair Competition Law). Among other infirmities noted herein, Plaintiff fails again to plead compliance with the notice-and-cure provision in the agreement at issue. Navy Federal further moves to dismiss Plaintiff's request for attorneys' fees because they are not recoverable by law or contract.

This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all the pleadings and papers on file herein, and on such other evidence and argument as may be presented at the hearing on this matter.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT NAVY FEDERAL CREDIT UNION'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT

1    This motion is made following the conference of counsel pursuant to L.R. 7-3

2    which took place on November 6, 2023.  The parties thoroughly discussed the

3    substance and potential resolution of the filed motion.

4

5    Dated:  November 16, 2023                **HUNTON ANDREWS KURTH LLP**

6

7                                                      By:   */s/ Jason J. Kim*

8                                                           Jason J. Kim

9                                                           Hakop Stepanyan

10                                                          Marcus E. Nelson

                                                          Attorneys for Defendant

                                                          NAVY FEDERAL CREDIT UNION

11

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT NAVY FEDERAL CREDIT UNION'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................. 1

II.     FACTS ................................................................................................. 2

        A.    Navy Federal's Business And Operations ................................ 2

        B.    The Account Agreement .......................................................... 3

        C.    Plaintiff's Allegations ............................................................. 3

        D.    Plaintiff's Central Theory ....................................................... 3

III.    PLAINTIFF'S PLEADING BURDEN ............................................... 5

IV.     PLAINTIFF FAILS TO STATE ANY VIABLE CAUSE OF ACTION ........... 5

        A.    Plaintiff Again Fails To Plead Compliance With The Notice-And-Cure Provision ................................................... 5

        B.    Plaintiff's Breach Of Contract Claim Independently Fails ...... 9

              1.    Plaintiff Fails To Allege An Express Breach ................. 9

              2.    Plaintiff Fails To Allege A Breach Of The Implied Covenant Of Good Faith And Fair Dealing ................... 10

        C.    Plaintiff's UCL Claim Fails ................................................... 11

              1.    Plaintiff Has A Legal Remedy .................................... 11

              2.    The UCL Claim Is Preempted ..................................... 13

              3.    The UCL Claim Is Barred By The Account Agreement's Choice-Of-Law Provision ........................ 16

              4.    Plaintiff Fails To Allege Unlawful, Unfair, Or Fraudulent Conduct .................................................... 17

V.      PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES SHOULD BE DISMISSED ........................................................................... 19

VI.     CONCLUSION ................................................................................. 20

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abat v. Chase Bank USA, N.A.*,
    738 F. Supp. 2d 1093 (C.D. Cal. 2010)...........................................................17

*Adams v. Cole Haan, LLC*,
    2020 WL 5648605 (C.D. Cal. Sept. 3, 2020)....................................................12

*Adams v. Johnson*,
    355 F.3d 1179 (9th Cir. 2004) ...........................................................................5

*Albayero v. Wells Fargo Bank, N.A.*,
    2011 WL 4748341 (E.D. Va. 2011) ..................................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................5

*Baptista v. JPMorgan Chase Bank, N.A.*,
    640 F.3d 1194 (11th Cir. 2011) ........................................................................15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................5, 8

*Canas v. Ocwen Loan Servicing LLC*,
    2015 WL 5601838 (C.D. Cal. Sept. 21, 2015) .................................................11

*Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
    2 Cal. 4th 342 (1992) .......................................................................................11

*Cel-Tech Comm'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) .....................................................................................20

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
    467 U.S. 837 (1984)..........................................................................................14

*ChromaDex, Inc. v. Elysium Health, Inc.*,
    2020 WL 1279236 (C.D. Cal. Jan. 16, 2020)................................................2, 8

*Credit Union Nat'l. Ass'n v. Nat'l Credit Union Admin.*,
    57 F. Supp. 2d 294 (E.D. Va. 1995) .................................................................13

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

ii

*Dirks v. CitiMortgage, Inc.*,
 2020 WL 7089823 (C.D. Cal. Nov. 19, 2020) ...................................17

*Docena v. Navy Fed. Credit Union*,
 2016 WL 53826 (D. Nev. Jan. 4, 2016) ......................................9, 10

*Gibson v. Jaguar Land Rover N. Am.*,
 LLC, 2020 WL 5492990 (C.D. Cal. Sept. 9, 2020) .....................11, 12

*Giotta v. Ocwen Loan Servicing, LLC*,
 706 F. App'x 421 (9th Cir. 2017) .................................................6

*Gutierrez v. Wells Fargo Bank, NA*,
 704 F.3d 712 (9th Cir. 2012) ......................................................15

*Guzman v. Polaris Indus. Inc.*,
 49 F.4th 1308 (9th Cir. 2022) ....................................................13

*IP Glob. Invs. Am., Inc. v. Body Glove IP Holdings, LP*,
 2018 WL 5983550 (C.D. Cal. Nov. 14, 2018) ........................1, 6, 7

*Keysight Techs., Inc. v. Mentor Graphics Corp.*,
 2017 WL 7310781 (N.D. Cal. Sept. 28, 2017)..........................6, 7

*Lambert v. Navy Fed. Credit Union*,
 2019 WL 3843064 (E.D. Va. Aug. 14, 2019) .......................2, 15, 16

*Loo v. Toyota Motor Sales, USA, Inc.*,
 2019 WL 7753448 (C.D. Cal. Dec. 20, 2019).............................13

*In re Macbook Keyboard Litig.*,
 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) .........................11, 12

*Madrigal v. Hint, Inc.*,
 2017 WL 6940534 (C.D. Cal. Dec. 14, 2017)..............................13

*Monaco v. Bear Stearns Companies, Inc.*,
 2011 WL 11027559 (C.D. Cal. Jan. 13, 2011)..............................18

*Montgomery v. Bank of Am. Corp.*,
 515 F. Supp. 2d 1106 (C.D. Cal. 2007).....................................15

*Monton v. Am.'s Servicing Co.*,
 2012 WL 3596519 (E.D. Va. 2012) ........................................10, 11

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

iii

*Navy Fed. Credit Union v. LTD Fin. Servs.*,
   LP, 972 F.3d 344 (4th Cir. 2020) ....................................................16

*Neagle v. Goldman Sachs Grp., Inc.*,
   2019 WL 1102199 (D. Or. Mar. 1, 2019) .........................................8

*Nedlloyd Lines B.V. v. Super. Ct.*,
   3 Cal. 4th 459 (1992) .....................................................................16

*Nolte v. Cedars-Sinai Med. Ctr.*,
   236 Cal. App. 4th 1401 (2015) .......................................................18

*O'Donnell v. Bank of Am., Nat. Ass'n*,
   504 F. App'x 566 (9th Cir. 2013) ...................................................17

*Oasis West Realty, LLC v. Goldman*,
   51 Cal. 4th 811 (2011) .....................................................................9

*Orthopaedic & Spine Ctr. v. Muller Martini Mfg. Corp.*,
   61 Va. App. 482 (2013) ..................................................................10

*Podwall v. Robinson*,
   2021 WL 4441975 (C.D. Cal. Sept. 28, 2021) .................................7

*Pulte Home Corp. v. Am. Safety Indem. Co.*,
   268 F. Supp. 3d 1091 (S.D. Cal. 2017) ...........................................16

*Rodriguez v. FCA US LLC*,
   2023 WL 3150075 (C.D. Cal. Mar. 21, 2023) .................................13

*Rose v. Chase Bank USA, N.A.*,
   513 F.3d 1032 (9th Cir. 2008) ........................................................15

*Satvati v. Allstate Northbrook Indem. Co.*,
   2022 WL 6184730 (C.D. Cal. Oct. 6, 2022) .....................................9

*Schertz v. Ford Motor Co.*,
   2020 WL 5919731 (C.D. Cal. July 27, 2020) .................................12

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010)........................................................................17

*Sigwart v. U.S. Bank*,
   713 F. App'x 535 (9th Cir. 2017)......................................................8

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

*Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*,
   2012 WL 13028094 (C.D. Cal. Apr. 4, 2012) ...................................................12

*Smith v. Flagstar Bank, FSB*,
   2018 WL 3995922 (N.D. Cal. Aug. 21, 2018) .....................................................6

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) .......................................................2, 11, 12, 13

*Sperling v. DSW Inc.*,
   2016 WL 354319 (C.D. Cal. Jan. 28, 2016) ......................................................17

*Sperling v. DSWC, Inc.*,
   699 F. App'x 654 (9th Cir. 2017) ..................................................................18

*Squire v. Virginia Hous. Dev. Auth.*,
   287 Va. 507 (2014) .....................................................................................10

*Whittington v. Mobiloil Fed. Credit Union*,
   2017 WL 6988193 (E.D. Tex. Sept. 14, 2017) ....................................13, 14, 15

*Wilde v. Flagstar Bank FSB*,
   2019 WL 1099841 (S.D. Cal. Mar. 8, 2019) .................................................6, 8

*Wilson v. Holyfield*,
   227 Va. 184 (1984) .....................................................................................10

*Zeller v. Optavia, LLC*,
   2022 WL 17858032 (S.D. Cal. Dec. 22, 2022) ................................................12

*Zhang v. Super. Ct.*,
   57 Cal. 4th 364 (2013) ................................................................................20

**Statutes**

12 U.S.C. § 4311 ...............................................................................................13

Cal. Civ. Code § 1638 .......................................................................................10

**Other Authorities**

12 C.F.R. Part 1074 (Appendix A) ....................................................15, 16, 17, 18

12 C.F.R. § 701.35(c) ........................................................................................14

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

v

12 C.F.R. § 707.1(d) ...................................................................................... 14

12 C.F.R. § 707.4(b)(4) ................................................................................. 14

16 C.F.R. § 1.5 .............................................................................................. 18

49 Fed. Reg. 46552-01 (Nov. 27, 1984) ................................................. 3, 14

50 Fed. Reg. 4636-01 (Feb. 1, 1985) .......................................................... 14

NCUA Op. Letter 04-0147 (Feb. 10, 2004) .................................................. 3

NCUA Op. Letter 04-0259 (Mar. 12, 2004) ............................................... 14

NCUA Op. Letter 07-0743 (Aug. 7, 2007) ................................................. 14

NCUA Op. Letter 97-0508 (July 7, 1997) .................................................. 14

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

DEFENDANT NAVY FEDERAL CREDIT UNION'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT

1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

2

## **I.   INTRODUCTION**

3

Plaintiff claims Navy Federal improperly charged him a "returned checks,

4

deposited or cashed" fee ("RCDC fee") in violation of Navy Federal's "Important

5

Disclosures" agreement (the "Account Agreement"), despite his concession that the

6

Account Agreement openly discloses such fees.[1]  This Court rightly dismissed

7

Plaintiff's claims based on his failure to comply with the notice-and-cure provision in

8

the Account Agreement, and it should do so again here—this time with prejudice.

9

Facing dismissal, Plaintiff now claims he complied with the notice-and-cure

10

provision by calling Navy Federal "to complain about the [RCDC] fee and attempted

11

to receive a refund of the fee."  FAC ¶ 38.  But that does not "sufficiently identify the

12

breach at issue such that [Navy Federal] knows what to cure."  *IP Glob. Invs. Am.,*

13

*Inc. v. Body Glove IP Holdings, LP*, 2018 WL 5983550, at *5 (C.D. Cal. Nov. 14,

14

2018).  Plaintiff does not claim he told Navy Federal it allegedly breached the

15

Account Agreement and the UCL, much less explain how it supposedly did so.  In

16

fact, Plaintiff does not even claim he told Navy Federal he intended to sue.  As

17

alleged, Plaintiff merely called to complain.  That is not sufficient notice, and

18

Plaintiff's claims begin and end there.

19

Plaintiff seemingly acknowledges this shortcoming by claiming it would have

20

been futile to provide notice.  Plaintiff, however, fails to explain why.  Navy Federal

21

did not disavow the Account Agreement or otherwise lack the ability to provide a $15

22

refund.  Even if Navy Federal ultimately declined to refund the fee after receiving

23

proper notice, that does not excuse Plaintiff's failure.  Indeed, Plaintiff ignores the

24

"other purposes of giving notice besides allowing for cure of the alleged breach,

25

including to allow [Navy Federal] the opportunity to ... reduce damages, … and

26

27

---

[1] Whether Plaintiff actually paid an RCDC fee—or even maintains an active checking

28

account at Navy Federal—is not before the Court on this motion.  Navy Federal accepts any such allegations as true solely for purposes of this motion.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1

negotiate settlements, and also inform[] [Navy Federal] of the need to preserve evidence and to be prepared to defend against the suit, and protect[] against stale claims." *ChromaDex, Inc. v. Elysium Health, Inc.*, 2020 WL 1279236, at *4 (C.D. Cal. Jan. 16, 2020) (quotations omitted).  By rushing to file suit, Plaintiff deprived Navy Federal of those opportunities, including the decision between burdening this Court with full-blown litigation and refunding a $15 fee.[2]

While Plaintiff's non-compliance with the notice-and-cure provision is dispositive on its own, the flaws in Plaintiff's claims run deeper:

*First*, Plaintiffs' contract claim fails because the Account Agreement permits Navy Federal to assess RCDC fees, and Plaintiff cites no provision that requires Navy Federal to make the entirety of his deposit available to him before doing so.

*Second*, Plaintiff's UCL claim fails for multiple reasons.  It fails under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 845 (9th Cir. 2020), because Plaintiff has an adequate legal remedy.  It is preempted.  *Lambert v. Navy Fed. Credit Union*, 2019 WL 3843064, at *2 (E.D. Va. Aug. 14, 2019).  It is foreclosed by the choice-of-law provision in the Account Agreement.  *Id.* at *6.  And there is no requisite conduct to support it.  Navy Federal complied with the Account Agreement, which openly discloses the RCDC fee.

Given Plaintiff's failure to cure the deficiencies cited by the Court during the last go-round, the Court should dismiss this action with prejudice.

## II.   FACTS

### A.   Navy Federal's Business And Operations

Navy Federal is a federally-chartered not-for-profit credit union whose members consist of United States military personnel and their families.[3]  Unlike

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

---

[2] Curiously, Plaintiff chose to sue Navy Federal over a $15 fee, but apparently took no action against the supposed party that wrote him the bad check for $38,206.65. Assuming that party actually exists, one would think Plaintiff would have sued them, given his willingness to sue Navy Federal over $15.

[3] https://www.navyfederal.org/about.html.

2

banks, "[c]redit unions are nonprofit cooperatives, owned by their members and democratically controlled, that may only lend and pay dividends to their members and, as such, are *disinclined by their nature and structure to engage in the kinds of practices regarded as predatory or abusive*."  NCUA Op. Letter 04-0147 (Feb. 10, 2004) (emphasis added); *see also* 49 Fed. Reg. 46552-01 (Nov. 27, 1984) ("[U]nlike other financial institutions, [federal credit unions] are controlled by their membership.").  Consistent with this philosophy, Navy Federal strives to "act with the highest degree of integrity," taking pride in its "good name and reputation," and working to provide "the highest level of service" to its member-owners.[4]

## B.    **The Account Agreement**

Plaintiff maintains a checking account at Navy Federal that is governed by the Account Agreement.  FAC ¶¶ 35, 55; Exh. B.  As a member of Navy Federal, Plaintiff "agree[d] to abide by" the terms and conditions of the Account Agreement.  *Id.*, Exh. B at 1.  As part of that agreement, Plaintiff agreed that Navy Federal could "accept or reject any check presented."  *Id.* ¶ 27; Exh. B at 10.  Moreover, Plaintiff agreed that "[f]ees and charges that may be assessed are disclosed on Navy Federal's current [Fee Schedule]," which included the RCDC fee.  *Id.*, Exh. B at 3; Exh. C at 1.

## C.    **Plaintiff's Allegations**

Plaintiff claims he deposited a $38,206.65 check into his account in July of 2022.  FAC ¶ 36.  The check was returned, and, consistent with the Account Agreement, Navy Federal charged Plaintiff a $15 RCDC fee on August 1, 2022.  *Id.* ¶ 37.  Even though Plaintiff agreed to pay this fee when he "deposits" a "check" that is later "returned," Plaintiff now claims it was "unfair, misleading, and unauthorized by the contract."  *Id.*

## D.    **Plaintiff's Central Theory**

Plaintiff asserts two claims relating to the assessment of RCDC fees:  (1) breach of contract; and (2) violation of UCL.  Plaintiff acknowledges Navy Federal disclosed

---

[4] https://www.navyfederal.org/about/operations.html.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

the existence of RCDC fees in his Account Agreement.  FAC, Exh. C (disclosing $15 fee for "Returned checks, deposited or cashed").  Plaintiff similarly acknowledges Navy Federal can assess RCDC fees when returned checks are deposited.  *Id.* ¶ 23. Despite this, Plaintiff claims returned checks are not "deposited" unless an accountholder has access to deposited funds.  *Id.* ¶¶ 12, 21-23.  Stated differently, Plaintiff claims the term "deposit" does not merely mean "deposit."  Rather, Plaintiff claims it should mean "to deposit an item" *and* "to receive use of the funds deposited in exchange."  *Id.* ¶ 21.  According to Plaintiff, "[w]here there is no cash provided … [Navy Federal] is not authorized by contract to assess a [RCDC fee]."  *Id.* ¶ 31. Plaintiff's Account Agreement says no such thing.

Contrary to Plaintiff's proposed definition of "deposit," the Account Agreement states that "deposits" occur before—and separately from—a member's access to deposited funds.  The general procedure for deposits follows:

> [O]ur general procedure is to make funds available from your **deposits** on or before the first business day **after** the day we receive your **deposit**.  At that time, you can withdraw the funds in cash and we will use the funds to pay checks or other items.  For example, if you **deposit** a check on Monday, you may not be able to access the funds from that **deposit**, to include paying other checks, until Tuesday or possibly later.

FAC, Exh. B at 8 (emphasis added).  Accordingly, the Account Agreement divorces the concept of a "deposit" from funds availability.

Indeed, the Account Agreement devotes an entire section to a "Funds Availability Schedule," which sets forth when funds will be made available *following a deposit*.  FAC, Exh. B at 8-10.  In the case of "Checks $225 and Over," for example, the Account Agreement states that the first $225 is available on or before the first business day *after the deposit is received*.  *Id.* at 9.[5]  The "remaining funds will be available on the second Business Day *after the day we are considered to have*

---

[5] Plaintiff does not claim Navy Federal failed to make $225 available to him.  Indeed, Navy Federal provided Plaintiff's counsel with evidence reflecting that fact.

4

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

*received your deposit.*"  *Id.* (emphasis added).  The Account Agreement further states: "[I]f you *deposit* a check of $1,000 on a Monday, $225 of the deposit is *available* on or before Tuesday.  The remaining $775 is *available* on or before Wednesday."  *Id.* (emphasis added).  The Account Agreement nowhere labels those "deposits" as "attempted deposits."  Rather, it states that funds are made available "after" a "deposit" has occurred already.  In plain English, the Account Agreement dooms Plaintiff's theory.

## III.  PLAINTIFF'S PLEADING BURDEN

To survive dismissal, Plaintiff must allege a "plausible" basis for relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  A claim is "plausible" only when the factual allegations allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Factual allegations that establish no "more than a sheer possibility" of liability are not sufficient.  *Id.*  And "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## IV.  PLAINTIFF FAILS TO STATE ANY VIABLE CAUSE OF ACTION

### A.  Plaintiff Again Fails To Plead Compliance With The Notice-And-Cure Provision

As a threshold matter, Plaintiff again fails to plead compliance with the Account Agreement's notice-and-cure provision, which states:

> Neither Member nor Navy Federal may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Agreement or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Agreement, until such party has **notified the other party of such alleged breach and afforded the other party a reasonable period after the giving of such notice to take corrective action**.

1    FAC, Exh. B at 8 (emphasis added).

2          This Court previously held the "notice-and-cure provision applies both to

3    Plaintiff's cause of action for breach of contract and Plaintiff's UCL cause of action,"

4    and it dismissed Plaintiff's claims for failing to comply with that provision.  ECF No.

5    19 at 6.  And rightly so.  Numerous courts, including the Ninth Circuit, have

6    confirmed that noncompliance with this precise provision necessitates dismissal.  *See,*

7    *e.g.*, *Giotta v. Ocwen Loan Servicing, LLC*, 706 F. App'x 421, 422 (9th Cir. 2017);

8    *Wilde v. Flagstar Bank FSB*, 2019 WL 1099841, at *3 (S.D. Cal. Mar. 8, 2019); *Smith*

9    *v. Flagstar Bank, FSB*, 2018 WL 3995922, at *3–4 (N.D. Cal. Aug. 21, 2018).

10         Facing dismissal, Plaintiff now claims he complied with the notice-and-cure

11   provision because he allegedly called Navy Federal "to complain about the fee and

12   attempted to receive a refund of the fee."  FAC ¶ 38.  "[E]xpress[ing] dissatisfaction"

13   with the RCDC fee, however, is not notice.  *Keysight Techs., Inc. v. Mentor Graphics*

14   *Corp.*, 2017 WL 7310781, at *7 (N.D. Cal. Sept. 28, 2017).

15         "The purpose of a notice and cure provision is to provide the breaching party an

16   opportunity to cure the breach before litigation."  *IP Glob. Invs. Am.*, 2018 WL

17   5983550, at *5.  "Logically, for a notice to fulfill this purpose, it must sufficiently

18   identify the breach at issue such that the breaching party knows what to cure."  *Id.*

19   The notice "must be clear and unambiguous, conveying an unquestionable purpose."

20   *Keysight*, 2017 WL 7310781, at *6.  It "must be reasonably clear about three things:

21   (1) that the party receiving the notice is alleged to be in breach of the contract; (2)

22   what the noticing party believes to constitute the material breach of the contract, and

23   thus informing the allegedly breaching party what it must do to cure the breach; and

24   (3) a deadline by which the allegedly breaching party must cure the breach."  *Id.*

25         Plaintiff failed to do any of those things.  He did not tell Navy Federal he

26   believed the assessment of the fee violated the Account Agreement or the UCL, how it

27   supposedly violated the Account Agreement or the UCL, or that he would sue if Navy

28   Federal failed to "cure" the unstated violations—much less provide a deadline by

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

6

DEFENDANT NAVY FEDERAL CREDIT UNION'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT

which he would file suit.  *Keysight*, 2017 WL 7310781, at *7 (notice insufficient because "nowhere in the email is there any accusation by Keysight that Tiburon or Mentor had breached its obligations … under the Agreement, or an identification of the specific maintenance obligation … that allegedly had not been satisfied"); *IP Glob. Invs. Am.*, 2018 WL 5983550, at *6 (notice insufficient because it "fails to identify the specific breach").

Because Plaintiff did not "specify what [Navy Federal] must do to cure the breach, set a deadline by which the breach must be cured, or the course of action [Plaintiff] intended to take against [Navy Federal] if the purported deficiencies were not addressed," he failed to comply with the notice-and-cure provision.  *Keysight*, 2017 WL 7310781, at *7.

Plaintiff cites *Podwall v. Robinson*, 2021 WL 4441975 (C.D. Cal. Sept. 28, 2021).  But *Podwall* underscores Plaintiff's noncompliance.  In *Podwall*, the plaintiff specified what the contract required and how the defendant breached it:  "[Podwall] told Robinson that, '[O]ur contract stipulated that after a specific date, that I was owed money from touring, so it was more that—The contract kicked in.  You owe me money from touring starting in June of 20 ... 2013,' and that Robinson owed him '10 percent of touring, as pursuant to our contract.'"  *Id.* at *3.  Here, Plaintiff did not specify what the Account Agreement allegedly required, much less how Navy Federal breached it.

Likely recognizing this deficiency, Plaintiff claims compliance with the notice-and-cure provision would have been futile.  FAC ¶ 39.  According to Plaintiff, the "futility of notice is demonstrated both by Plaintiff's own experience, in which he requested a refund and was denied, and by the fact that even after being provided notice by the CFPB that the assessment of such fees is considered 'unfair' under federal law, NFCU still failed to refund Plaintiff and class members of the fees at issue."  *Id.*  Plaintiff is wrong.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT NAVY FEDERAL CREDIT UNION'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT

*First*, notice is not futile because Navy Federal denied a refund.  FAC ¶ 39. Given Plaintiff failed to tell Navy Federal why it allegedly was obligated to provide a refund, it is hardly surprising Navy Federal did not provide one.

*Second*, "[g]uessing what [Navy Federal] would have done had [Plaintiff] provided notice is purely speculative."  *Neagle v. Goldman Sachs Grp., Inc.*, 2019 WL 1102199, at *4 (D. Or. Mar. 1, 2019) (rejecting similar futility argument).  And Plaintiff cannot survive dismissal through speculation.  *Twombly*, 550 U.S. at 555.

*Third*, Plaintiff's futility claim "ignores the other purposes of giving notice besides allowing for cure of the alleged breach, including to allow [Navy Federal] the opportunity to ... reduce damages, … and negotiate settlements, and also inform[ ] [Navy Federal] of the need to preserve evidence and to be prepared to defend against the suit, and protect[ ] against stale claims."  *ChromaDex*, 2020 WL 1279236, at *4 (quotations omitted).  By rushing to file suit, Plaintiff deprived Navy Federal of those opportunities.  Had Plaintiff given Navy Federal the choice between litigation versus a $15 refund, the Court might not have been burdened with this lawsuit.  Plaintiff, however, deprived Navy Federal of the opportunity to make that business decision.

Plaintiff cites *Sigwart v. U.S. Bank*, 713 F. App'x 535 (9th Cir. 2017).  In *Sigwart*, however, the court deemed notice to a bank in connection with a wrongful foreclosure to be futile because the bank "no longer held title to the property."  *Id.* at 537.  Here, Navy Federal had the ability to provide Plaintiff a $15 refund.

Despite leave to amend, Plaintiff has failed again to allege compliance with the notice-and-cure provision.  The Court should dismiss this lawsuit with prejudice. *Wilde*, 2019 WL 1099841, at *3 ("Because the time for complying with the notice-and-cure provision expired when Wilde filed suit—and because Wilde does not allege in either his complaint or opposition that he complied with this provision— amendment would be futile.").

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

**B.**   **Plaintiff's Breach Of Contract Claim Independently Fails**

**1.**   **Plaintiff Fails To Allege An Express Breach**

Plaintiff cannot state an express contract claim.  To do so under either Virginia or California law,[6] Plaintiff must allege: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Docena v. Navy Fed. Credit Union*, 2016 WL 53826, at *2 (D. Nev. Jan. 4, 2016); *see also Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)).  Plaintiff cannot do so.

As a threshold matter, "[t]o survive a motion to dismiss, a plaintiff must identify a specific contract provision breached by the defendant." *Satvati v. Allstate Northbrook Indem. Co.*, 2022 WL 6184730, at *2 (C.D. Cal. Oct. 6, 2022).   Plaintiff fails to do so.  Instead, Plaintiff claims "[n]o contract provision authorizes Navy Federal to charge [RCDC] Fees even on attempted deposits even when no actual deposit took place."  FAC ¶¶ 54-55.  Plaintiff is mistaken in any event.

Plaintiff admits Navy Federal disclosed a $15 RCDC fee in the Fee Schedule. FAC ¶ 21; Exh. C at 1.  Moreover, the Account Agreement dispels Plaintiff's manufactured definition of the term "deposit"—*i.e.*, that "deposit" means "to deposit an item *and* to receive use of the funds deposited in exchange." *Id.* ¶ 21 (emphasis added).  The Funds Availability section alone repeatedly states that "deposits" occur before a member's access to deposited funds.  *Id.*, Exh. B at 8-10.

Plaintiff points to language in the Account Agreement addressing check rejections and chargebacks.  FAC ¶ 27.  But that provision simply affords Navy Federal the right to charge back funds it previously made available.  *Id.*, Exh. B at 10. It does not mention the term "deposit," much less define it in the manner Plaintiff suggests.

---

[6] Plaintiff's account is "governed in accordance with federal law and the laws of the Commonwealth of Virginia."  FAC, Exh. B at 8.  Accordingly, Virginia law governs. But even if California law applied, the claim fails nonetheless.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

9

As before, Plaintiff might claim the "common usage" of the term "deposit" means receiving access to deposited funds—without citing any source for such interpretation. But that claim contradicts usage of the term "deposit" in the Account Agreement. *See* FAC, Exh. B at 8 (Navy Federal's "general procedure is to make funds available from your deposits on or before the first business day *after* the day we receive your deposit.") (emphasis added).

The plain terms of the Account Agreement authorized the RCDC fee as soon as Plaintiff's "deposited" check was "returned," and no amount of artful wordplay can avoid that conclusion. Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."); *Orthopaedic & Spine Ctr. v. Muller Martini Mfg. Corp.*, 61 Va. App. 482, 490 (2013) ("[W]hen the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning."). While Plaintiff might not like RCDC fees, he cannot rewrite the Account Agreement to avoid them. *Squire v. Virginia Hous. Dev. Auth.*, 287 Va. 507, 516 (2014) (courts construe a contract "as written, without adding terms that were not included by the parties"); *Wilson v. Holyfield*, 227 Va. 184, 187 (1984) ("It is the function of the court to construe the contract made by the parties, not to make a contract for them."). Because Plaintiff cannot plead around the Account Agreement, the Court should dismiss his contract claims with prejudice.

### 2. Plaintiff Fails To Allege A Breach Of The Implied Covenant Of Good Faith And Fair Dealing

"[N]o implied duty arises with respect to activity governed by express contractual terms." *Docena*, 2016 WL 53826, at *3. The implied covenant of good faith and fair dealing "cannot be invoked to undercut a party's express contractual rights," nor does it "compel a party to take affirmative action not otherwise required under the contract" or "establish independent duties not otherwise agreed upon by the parties." *Monton v. Am.'s Servicing Co.*, 2012 WL 3596519, *7 (E.D. Va. 2012); *see*

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

10

1   *also Canas v. Ocwen Loan Servicing LLC*, 2015 WL 5601838, at \*5 (C.D. Cal. Sept.

2   21, 2015) (implied covenant does not "impose substantive duties or limits on the

3   contracting parties beyond those incorporated in the specific terms of their

4   agreement").  Accordingly, a "party does not violate the obligation to act in good faith

5   by enforcing a contractual right." *Albayero v. Wells Fargo Bank, N.A.*, 2011 WL

6   4748341, \*6 (E.D. Va. 2011) (quotations omitted); *see also Carma Devs. (Cal.), Inc.*

7   *v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (1992) ("We are aware of no reported

8   case in which a court has held the covenant of good faith may be read to prohibit a

9   party from doing that which is expressly permitted by an agreement.").

10   　　　As shown above, the Account Agreement expressly addresses RCDC fees and

11   authorizes Navy Federal to charge them in the manner it did.  Therefore, Plaintiff

12   cannot state an implied covenant claim.  *Monton*, 2012 WL 3596519, \*7 (dismissing

13   implied covenant claim because contract "expressly provided ASC the right to

14   accelerate payment of the loan and ultimately foreclose on the property").

15   　　　Plaintiff likely will claim Navy Federal violated the implied covenant by

16   exercising its discretion to charge RCDC fees in bad faith.  But Navy Federal does not

17   exercise discretion when checks are returned.  If a "deposited" check is "returned," a

18   fee is charged under the Account Agreement.  Accordingly, Plaintiff cannot state an

19   implied covenant claim.

20   　　　**C.**　　**Plaintiff's UCL Claim Fails**

21   　　　　　　**1.**　　**Plaintiff Has A Legal Remedy**

22   　　　The Ninth Circuit has held that a plaintiff cannot pursue a UCL claim unless he

23   lacks an adequate legal remedy.  *Sonner*, 971 F.3d at 845 (affirming dismissal of UCL

24   claim where the plaintiff "fail[ed] to demonstrate that she lacks an adequate legal

25   remedy").  Numerous courts have dismissed UCL claims for failure to allege lack of

26   an adequate legal remedy, and the Court should do so here.  *See, e.g.*, *In re Macbook*

27   *Keyboard Litig.*, 2020 WL 6047253, at \*4 (N.D. Cal. Oct. 13, 2020); *Gibson v.*

28   *Jaguar Land Rover N. Am.*, LLC, 2020 WL 5492990, at \*3-4 (C.D. Cal. Sept. 9,

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

11

2020); *Schertz v. Ford Motor Co.*, 2020 WL 5919731, at *2 (C.D. Cal. July 27, 2020); *Adams v. Cole Haan, LLC*, 2020 WL 5648605, at *2 (C.D. Cal. Sept. 3, 2020).

Through his UCL claim, Plaintiff seeks equitable relief in the form of restitution of RCDC fees.  FAC ¶ 77, Prayer for Relief.  However, Plaintiff cannot explain why the damages he seeks in connection with his contract claim cannot fully compensate him.  *Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*, 2012 WL 13028094, at *3 (C.D. Cal. Apr. 4, 2012) (plaintiff "fail[ed] to plausibly allege it lack[ed] an adequate remedy at law because it fail[ed] explain why the damages it seeks elsewhere in its complaint are not adequate to compensate it for its alleged injuries").

Indeed, Plaintiff's "request for 'restitution' under the [] UCL is a request for a refund, or actual money damages."  *Zeller v. Optavia, LLC*, 2022 WL 17858032, at *7 (S.D. Cal. Dec. 22, 2022); *see also In re MacBook Keyboard Litig.*, 2020 WL 6047253 at *4 (money damages adequate where "Plaintiffs' claims rest on their alleged overpayments and Apple's failure to issue refunds"); *Gibson*, 2020 WL 5492990, at *3 (money damages are adequate because "Plaintiff repeatedly alleges that he and the putative class 'lost money or property' as a result of Jaguar's wrongful conduct").  Plaintiff ultimately seeks a refund of the RCDC fees charged by Navy Federal —*i.e.*, the same relief he seeks in connection with his contract claim.  Whether Plaintiff obtains "restitution of RCDC fees" or damages consisting of those fees, the recovery is the same.  *See Sonner*, 971 F.3d at 844 ( "Sonner fails to establish that she lacks an adequate remedy at law" because Sonner "seeks the same sum in equitable restitution … as she requested in damages").  Plaintiff has an adequate legal remedy, and the UCL claim fails for this reason alone.[7]  Further, because the UCL and contract

---

[7] Plaintiff does not seek injunctive relief in connection with his UCL claim, but the result would be the same even if he did.  Plaintiff's sparse references to injunctive relief in the FAC reinforce the notion that legal remedies are adequate.  *See*, *e.g.*, FAC ¶ 6 (seeking to "force [Navy Federal] to refund improper [RCDC] Fees").  Further, any request for injunctive relief is moot because Navy Federal stopped charging RCDC fees.  RJN, Exh. A (current fee schedule that removed RCDC fees).

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

claims are based on the same "factual predicates," the UCL claim should be dismissed with prejudice. *Loo v. Toyota Motor Sales, USA, Inc.*, 2019 WL 7753448, at *13 (C.D. Cal. Dec. 20, 2019) (dismissing UCL claim without leave to amend because it relies on same "factual predicates" as legal claims); *Madrigal v. Hint, Inc.*, 2017 WL 6940534, at *4-5 (C.D. Cal. Dec. 14, 2017) (same).

Plaintiff likely will claim *Sonner* does not apply at the pleading stage because its procedural posture differed. But the "Ninth Circuit in *Guzman* [] confirmed that *Sonner* was not confined to its specific procedural posture." *Rodriguez v. FCA US LLC*, 2023 WL 3150075, at *4 (C.D. Cal. Mar. 21, 2023); *see also Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022).

Plaintiff also cannot avoid *Sonner* because his contract theories might fail. *Guzman*, 49 F.4th at 1312 (finding plaintiff "had an adequate remedy at law through his CLRA claim for damages, even though he could no longer pursue it, and that the district court was therefore required to dismiss his equitable UCL claim").

### 2.     The UCL Claim Is Preempted

The UCL claim also is preempted by the National Credit Union Administration's ("NCUA") regulations implementing the Federal Credit Union Act ("FCUA") and Truth in Savings Act ("TISA"). The FCUA "authorized the creation of federally-chartered credit unions and created the NCUA to supervise those federally-chartered credit unions." *Credit Union Nat'l. Ass'n v. Nat'l Credit Union Admin.*, 57 F. Supp. 2d 294, 296 (E.D. Va. 1995). Congress provided the NCUA with the power to "prescribe rules and regulations" for the administration of the FCUA. *Whittington v. Mobiloil Fed. Credit Union*, 2017 WL 6988193, at *6 (E.D. Tex. Sept. 14, 2017). Similarly, "Congress enacted TISA and delegated to the NCUA the authority to promulgate regulations for credit unions 'taking into account [their] unique nature.'" *Id.* (quoting 12 U.S.C. § 4311). "As the agency tasked to administer the FCUA and TISA, the NCUA's regulations, as well as their interpretation, are given 'controlling

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

weight.'" *Id.* at *7 (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)).

Under FCUA regulations, a federal credit union may "determine the types of fees or charges and other matters affecting the opening, maintaining and closing of a [checking] account. *State laws regulating such activities are not applicable to federal credit unions.*" 12 C.F.R. § 701.35(c) (emphasis added). Accordingly, federal credit unions are "authorized to determine, *free from state regulation*, the types of disclosures, fees or charges, time for crediting of deposited funds, and all other matters associated with the establishment, maintenance or closing of a [checking] account." 49 Fed. Reg. 46552-01 (Nov. 27, 1984) (emphasis added). A federal credit union's "policies with respect to disclosures, fees or charges, time for crediting of deposited funds, and other matters affecting the opening, maintaining or closing of a [checking] account, shall be … *free from regulatory restrictions*."[8] 50 Fed. Reg. 4636-01 (Feb. 1, 1985) (emphasis added).

Similarly, TISA regulations require credit unions to disclose the " amount of any fee that may be imposed in connection with the account (or an explanation of how the fee will be determined) and the conditions under which the fee may be imposed" (12 C.F.R. § 707.4(b)(4)), and they expressly preempt "[s]tate law requirements that are inconsistent with the requirements of the TISA and [its implementing regulations]" (12 C.F.R. § 707.1(d)).

_____

[8] The NCUA has applied 12 C.F.R. § 701.35(c) to preempt various state laws that affect the fees a credit union may charge. *See*, *e.g.*, NCUA Op. Letter 07-0743 (Aug. 7, 2007) (Georgia law prohibiting federal credit unions from charging a fee for cashing checks is preempted); NCUA Op. Letter 04-0259 (Mar. 12, 2004) (Connecticut statute prohibiting federal credit unions from assessing fees against member share accounts based on inactivity or dormancy is preempted); NCUA Op. Letter 97-0508 (July 7, 1997) (in the context of assessment of overdraft fees, "state laws regulating matters affecting the opening, maintaining and closing of a share draft account are not applicable to an FCU").

14

"Consistent with the language and purpose of these regulations, it is well established that state law claims regarding a federal credit union's failure to disclose certain fee practices or any perceived unfairness in the fee practices themselves are preempted." *Lambert*, 2019 WL 3843064, at *2. Accordingly, Plaintiff cannot use the UCL, a state law, to challenge the alleged unfairness of "charg[ing] [RCDC] fees even where no actual deposit or check cashing took place." FAC ¶ 74. Plaintiff's "attempts to use a state consumer law to dictate to a federal credit union what fees it may charge and how it may charge them" are preempted. *Whittington*, 2017 WL 6988193, at *9 (Deceptive Trade Practices Act claim preempted); *see also Lambert*, 2019 WL 3843064, at *3 ("To the extent Plaintiff challenges a perceived failure to disclose, the specific language used in the disclosure, or the fairness of the fee practice itself … those arguments are clearly preempted.").[9]

Plaintiff likely will argue his UCL claim is not preempted to the extent it is based on misrepresentations. But "practices [that] were fully disclosed … are preempted." *Whittington*, 2017 WL 6988193, at *10. Because Plaintiff admits Navy Federal disclosed the RCDC fee in the Fee Schedule, he cannot avoid preemption on that basis. FAC ¶ 21, Exh. C at 1. And he fails to cite any misrepresentations in that Fee Schedule in any event, much less with particularity.

Plaintiff also might claim preemption should not apply because the CFPB allegedly deems RCDC fees unfair. But the CFPB's statements do "not confer any rights of any kind" or "impose any new or revise any existing … disclosure requirements." FAC, Exh. A at 66942. "Unlike a law or regulation," the CFPB's statements do "not have the force and effect of law." 12 C.F.R. Part 1074 (Appendix

---

[9] Numerous courts have reached a similar conclusion. *See*, *e.g.*, *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 730 (9th Cir. 2012) (UCL claim challenging posting order preempted); *Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194, 1197-98 (11th Cir. 2011) (state statute disallowing fees preempted); *Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1038 (9th Cir. 2008) (UCL claim preempted); *Montgomery v. Bank of Am. Corp.*, 515 F. Supp. 2d 1106, 1113 (C.D. Cal. 2007) (UCL and CLRA claims preempted).

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

A) (CFPB's Statement Clarifying the Role of Supervisory Guidance).  According to the CFPB, a financial institution cannot be criticized for a "'violation' of or 'non-compliance' with" the statements upon which Plaintiff relies.  *Id.*  Accordingly, Plaintiff cannot utilize the CFPB's statements to escape preemption.

### 3.  The UCL Claim Is Barred By The Account Agreement's Choice-Of-Law Provision

Plaintiff's UCL claim also fails under the Account Agreement's choice-of-law provision because his account is "governed in accordance with federal law and the laws of the Commonwealth of Virginia, as amended."  FAC, Exh. B at 8.

"A 'federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits.'"  *Pulte Home Corp. v. Am. Safety Indem. Co.*, 268 F. Supp. 3d 1091, 1095 (S.D. Cal. 2017).  As such, California law governs the enforceability question.  *Id.*  "In determining the enforceability of a choice-of-law provision, California courts apply the principles set forth in Restatement § 187 which reflect a strong policy favoring enforcement of such provisions."  *Id.* (citing *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 465 (1992)).

"The party advocating application of the choice-of-law provision has the burden of establishing a substantial relationship between the chosen state and the contracting parties."  *Pulte Home*, 268 F. Supp. 3d at 1095.  Navy Federal readily meets that burden because it "had its princip[al] place of business in the chosen state."  *Id.*; *see also Nedlloyd Lines*, 3 Cal. 4th at 467 ("If one of the parties resides in the chosen state, the parties have a reasonable basis for their choice."); *Navy Fed. Credit Union v. LTD Fin. Servs.*, LP, 972 F.3d 344, 353 (4th Cir. 2020) (Navy Federal's principal place of business is Virginia).  The choice-of-law provision is enforceable, and the Court should enforce it.

In *Lambert*, the court considered the choice-of-law provision in the Account Agreement and found it "sufficiently broad to preclude" claims under North Carolina's Unfair and Deceptive Trade Practices Act.  *Lambert*, 2019 WL 3843064, at

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

16

*6. The Court should reach the same conclusion here and dismiss Plaintiff's UCL claim accordingly.

Plaintiff likely will claim the choice-of-law provision conflicts with California's policy favoring class actions. Even if Virginia's analogous consumer protection statute, the Virginia Consumer Protection Act, does not provide for class actions, FRCP 23 allows them and controls in such situations. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010).

Plaintiff also might claim California has a greater interest in having its laws applied. But Plaintiff seeks to represent a nationwide class against a Virginia credit union. There is no reason why California has a greater interest than any other state in which putative class members reside. *Abat v. Chase Bank USA, N.A.*, 738 F. Supp. 2d 1093, 1095 (C.D. Cal. 2010).

### 4. Plaintiff Fails To Allege Unlawful, Unfair, Or Fraudulent Conduct

Beyond those shortcomings, Plaintiff cannot show Navy Federal's alleged conduct is "(1) unlawful, (2), unfair, or (3) fraudulent." *Dirks v. CitiMortgage, Inc.*, 2020 WL 7089823, at *5 (C.D. Cal. Nov. 19, 2020).

*First*, Plaintiff cannot show "unlawful" conduct. As set forth above, the CFPB has formally stated that its supervisory guidance "does not have the force and effect of law." 12 C.F.R. Part 1074 (Appendix A).

Plaintiff might claim a "violation" of CFPB supervisory guidance can serve as a predicate offense based on FTC-related decisions. But in two separate instances, the Ninth Circuit upheld the dismissal of a UCL claim predicated on a violation of the FTC Act and FTC guidelines. *O'Donnell v. Bank of Am., Nat. Ass'n*, 504 F. App'x 566, 568 (9th Cir. 2013) ("The district court rightly dismissed the unfair competition claim premised on Bank of America's alleged violation of the Federal Trade Commission Act. The federal statute doesn't create a private right of action, and plaintiffs can't use California law to engineer one."); *Sperling v. DSW Inc.*, 2016 WL

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

17

354319, at *2 (C.D. Cal. Jan. 28, 2016) (plaintiff cannot predicate UCL claim on alleged violation of FTC regulations), aff'd sub nom. *Sperling v. DSWC, Inc.*, 699 F. App'x 654 (9th Cir. 2017).  Moreover, FTC guidelines materially differ from CFPB guidelines.  The "[f]ailure to comply with the [FTC] guides may result in corrective action by the Commission under applicable statutory provisions." 16 C.F.R. § 1.5.  In contrast, the CFPB "does not take enforcement actions based on supervisory guidance," and it has specifically cautioned that a financial institution cannot be criticized for a "'violation' of or 'non-compliance' with supervisory guidance."  12 C.F.R. Part 1074 (Appendix A).  Accordingly, Plaintiff cannot rely on a non-binding CFPB bulletin as a basis to claim "unlawful" conduct.

*Second*, Plaintiff cannot show "fraudulent" conduct because the Account Agreement and corresponding Fee Schedule openly disclose the RCDC fee, which Navy Federal charges for "Returned checks," whether "deposited or cashed."  Plaintiff also fails to plead reliance because he did not read the Account Agreement.  *Monaco v. Bear Stearns Companies, Inc.*, 2011 WL 11027559 (C.D. Cal. Jan. 13, 2011).

*Third*, Plaintiff cannot show "unfair" conduct.  To do so, Plaintiff must show Navy Federal's assessment of RCDC fees "violates established public policy or … is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits" *Nolte v. Cedars-Sinai Med. Ctr.*, 236 Cal. App. 4th 1401, 1407 (2015).  Plaintiff cannot do so.

Plaintiff claims Navy Federal's "acts and practices offend an established public policy of fee transparency in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers." FAC ¶ 69.  Plaintiff further claims the "harm to Plaintiff and the Class outweighs the utility of Defendant's practices" because "[t]here were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein."  *Id.* ¶ 70.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

18

As stated above, Navy Federal disclosed RCDC fees, and Plaintiff's attempt to twist the language of those disclosures to say otherwise is implausible.  There is no lack of "fee transparency" or "misleading and deceptive conduct" here.  FAC ¶¶ 69-70.  And there is nothing "unfair" about Navy Federal's performance of a contract in accordance with its terms.

Plaintiff might claim RCDC fees are "unfair" because they have no utility and only serve to drive profits.  Setting aside that Navy Federal is a *not-for-profit* credit union serving members of the military, Plaintiff's own allegations dispel any notion of "unfairness."  According to Plaintiff, when funds are made available:

> [T]he return of a deposit causes real risk for the Credit Union.  Having already provided cash or allowed the accountholder to use funds deposited, the Credit Union must attempt to recoup those funds and must debit funds from the account to ensure they can no longer be spent.  Debiting those funds may cause an overdraft on the account.

FAC ¶ 25.  As explained above, in the case of "Checks $225 and Over," the Account Agreement states that the first $225 is made available on or before the first business day after the deposit is received.  *Id.*, Exh. B at 9.  Under Plaintiff's own theory, it is "fair" to assess RCDC fees because Navy Federal faces the "real risk" that it "must attempt to recoup" that $225 or "debit [those] funds from the account."  *Id.* ¶ 25.

Accordingly, Plaintiff fails to allege the requisite conduct for a UCL claim.  Dismissal is warranted for this additional reason.

## V.   <u>PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES SHOULD BE DISMISSED</u>

The Account Agreement does not permit Plaintiff to recover attorneys' fees.  The only mention of attorneys' fees in the Account Agreement authorizes Navy Federal to recover attorneys' fees in connection with contractual liens.  FAC Exh. B at 7.  Even if this this provision is interpreted to apply mutually to Plaintiff, it has no bearing here, as Navy Federal does not seek to "collect" on a "negative or overdrawn amount on any account."  *Id.*

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

19

1    Nor are attorneys' fees recoverable under the UCL. *Cel-Tech Comm'ns, Inc. v.*

2  *Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 179 (1999); *Zhang v. Super. Ct.*, 57

3  Cal. 4th 364, 371 (2013). Plaintiff's request for attorneys' fees should be dismissed.

**VI.**    **CONCLUSION**

5    Having failed to cure the deficiencies cited by the Court during the last go-

6  round, the Court should dismiss Plaintiff's FAC with prejudice.

7

8  Dated:  November 16, 2023            **HUNTON ANDREWS KURTH LLP**

9

10                              By:    */s/ Jason J. Kim*
                                         Jason J. Kim
11                                        Hakop Stepanyan
12                                        Marcus E. Nelson
                                         Attorneys for Defendant
13                                        NAVY FEDERAL CREDIT UNION

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant Navy Federal Credit Union, certifies that this brief contains 6,512 words, which:

  <u>X</u> complies with the word limit of L.R. 11-6.1.

  ___ complies with the word limit set by court order dated [date].


Dated:  November 16, 2023          **HUNTON ANDREWS KURTH LLP**


By:   ___*/s/ Jason J. Kim*_____
                Jason J. Kim
                Hakop Stepanyan
                Marcus E. Nelson
          Attorneys for Defendant
          NAVY FEDERAL CREDIT UNION