**KALIELGOLD PLLC**
Sophia Gold (SBN 307971)
950 Gilman Street, Suite 200
Berkeley, California 94710
Telephone: (202) 350-4783
sgold@kalielgold.com

**KALIELGOLD PLLC**
Jeffrey D. Kaliel (SBN 238293)
Amanda J. Rosenberg (278507)
1100 15th Street, NW, 4th Floor
Washington, D.C.  20005
Telephone: (202) 350-4783
jkaliel@kalielpllc.com
arosenberg@kalielgold.com

*Attorneys for Plaintiff and the Proposed Classes*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| ANDREW KING, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>NFCU CREDIT UNION and DOES 1-50, inclusive,<br><br>    Defendant. | Case No: 2:23-cv-05915-SPG-AGR<br><br>Hon. Sherilyn Peace Garnett<br><br>**PLAINTIFF ANDREW KING'S MEMORANDUM IN SUPPORT OF OPPOSITION TO DEFENDANT NAVY FEDERAL CREDIT UNION'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date: December 20, 2023<br>Time: 1:30 p.m.<br>Courtroom: 5C |

# **TABLE OF CONTENTS**

Page

I.  INTRODUCTION ................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................... 3

III.  LEGAL STANDARD ........................................................................... 3

    A.  Though Unnecessary, Plaintiff Complied with the
        Notice Provision ....................................................................... 3

    B.  Plaintiff States a Claim for Breach of Contract ..................... 6

    C.  Plaintiff States a Claim for Breach of Implied Covenant of
        Good Faith and Fair Dealing ................................................... 11

    D.  Plaintiff States a Claim Under the UCL ................................. 12

        1.  NFCU Violates the "Unlawful" Prong ........................ 12

        2.  NFCU Violates the "Fraudulent" Prong ..................... 13

        3.  NFCU Violates the "Unfair" Prong ............................. 14

        4.  California Law Applies to Plaintiff's UCL Claim .......... 16

        5.  Plaintiff's UCL Claim Is Not Preempted ..................... 18

        6.  *Sonner* Does Not Bar Plaintiff's UCL Claim, or In the
            Alternative, the Court Should Remand Plaintiff's UCL
            Claim ............................................................................ 19

    E.  Plaintiff Can Recover Attorneys' Fees ................................... 20

IV.  CONCLUSION .................................................................................... 21

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

# **TABLE OF AUTHORITIES**

Page(s)

## **CASES**

*Allied Prop. & Cas. Ins. Co. v. Zenith Aviation, Inc.*,
  336 F. Supp. 3d 607 (E.D. Va. 2018) ............................................... 6

*America Online, Inc. v. Superior Court*,
  90 Cal. App. 4th 1, 108 Cal. Rptr. 2d 699 (2001) .................................... 16, 17

*Aral v. Earthlink, Inc.*,
  134 Cal. App. 4th 544, 36 Cal. Rptr. 3d 229 (2005) ................................ 17

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ................................................................. 17

*Babcock & Wilcox Co. v. Areva NP, Inc.*,
  292 Va. 165 (2016) ................................................................. 8

*Barnett Bank of Marion Cty., N.A. v. Nelson*,
  517 U.S. 25 (1996) ................................................................. 18

*Caldwell v. Transportation Ins. Co.*,
  364 S.E.2d 1 (1988) ................................................................ 6

*Candelore v. Tinder, Inc.*,
  19 Cal. App. 5th 1138 (2018) ..................................................... 14

*Clark v. Am. Honda Motor Co.*,
  528 F. Supp. 3d 1108 (C.D. Cal. 2021) ........................................... 20

*Enomoto v. Space Adventures, Ltd.*,
  624 F. Supp. 2d 443 (E.D. Va. 2009) ............................................. 11

*Ewing v. K2 Prop. Dev., LLC*,
  2018 WL 4852159 (S.D. Cal. Oct. 4, 2018) ....................................... 4

*Fields v. Legacy Health Sys.*,
  413 F.3d 943 (9th Cir. 2005) ..................................................... 16

*First Com. Mortg. Co. v. Reece*,
  89 Cal. App. 4th 731, 108 Cal. Rptr. 2d 23 (2001) ............................... 6

*FNBN Rescon I, LLC v. Citrus El Dorado, LLC*,
  725 F. App'x 448 (9th Cir. 2018) ................................................ 4

*Giuffre Hyundai, Ltd. v. Hyundai Motor Am.*,
  756 F.3d 204 (2d Cir. 2014) ...................................................... 5

*Gutierrez v. Wells Fargo & Co.*,
  622 F. Supp. 2d 946 (N.D. Cal. 2009) ............................................ 12

*Gutierrez v. Wells Fargo Bank*,
    704 F.3d 712, 727-28 (9th Cir. 2012) ................................................ 14, 18, 19

*Guzman v. Polaris Indus. Inc.*,
    49 F.4th 1308 (9th Cir. 2022) .......................................................... 20

*In re Apple Inc. Device Performance Litig.*,
    386 F. Supp. 3d 1155 (N.D. Cal. 2019) .......................................... 16

*In re Checking Account Overdraft Litig.*,
    694 F. Supp. 2d 1302 (S.D. Fla. 2010) ........................................... 12

*In re First Alliance Mortg. Co.*,
    471 F.3d 977 (9th Cir. 2006) ........................................................... 12

*In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.*,
    1 F. Supp. 3d 34 (E.D.N.Y.), *on reconsideration sub nom. In re*
    *HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 14 F. Supp.
    3d 99 (E.D.N.Y. 2014) ............................................................. 12, 18

*In re TD Bank, N.A.*,
    150 F. Supp. 3d 593 (D.S.C. 2015) ................................................. 18

*In re Tobacco II Cases*,
    46 Cal. 4th 298, 312, 207 P.3d 20 (2009) ...................................... 13

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
    959 F.3d 1201 (9th Cir. 2020) ......................................................... 18

*Inga v. Bellacor.com, Inc.*,
    No. 219CV10406MWFMRW, 2020 WL 5769080
    (C.D. Cal. July 17, 2020) ............................................................... 13

*IntegrityMessageBoards.com v. Facebook, Inc.*,
    No. 18-CV-05286-PJH, 2020 U.S. Dist. LEXIS 208510 (N.D. Cal.
    Nov. 6, 2020) ................................................................................. 20

*IP Glob. Invs. Am., Inc. v. Body Glove IP Holdings, LP,* No.
    217CV06189ODWAGR, 2018 WL 5983550 (C.D. Cal. Nov. 14,
    2018), *amended*, No. 217CV06189ODWAGR, 2019 WL 121191
    (C.D. Cal. Jan. 7, 2019) ................................................................... 5

*Jeong v. Nexo Fin. LLC*,
    No. 21-CV-02392-BLF, 2022 WL 174236 (N.D. Cal. Jan. 19, 2022) ........... 20

*Keysight Techs., Inc. v. Mentor Graphics Corp.*,
    No. C 17-05222 SBA, 2017 WL 7310781 (N.D. Cal. Sept. 28, 2017)............. 5

*Kivett v. Flagstar Bank*,
    333 F.R.D. 500 (N.D. Cal. 2019), *vacated and remanded sub nom on*
    *other grounds, Kivett v. Flagstar Bank, FSB,* No. 21-15667, 2022
    WL 1553266 (9th Cir. May 17, 2022) ............................................... 5

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Lambert v. Navy Fed. Credit Union*,
  2019 WL 3843064 (E.D. Va. Aug. 14, 2019)................................... 18, 17, 18

*Lloyd v. Navy Fed. Credit Union*,
  No. 17-CV-1280-BAS-RBB, 2018 WL 1757609 (S.D. Cal. Apr. 12,
  2018) ................................................................................ 14, 16, 17

*Lussoro v. Ocean Fin. Fed. Credit Union*,
  456 F. Supp. 3d 474 (E.D.N.Y. 2020) ......................................... 5, 18

*Martin Marietta*,
  991 F.2d 94 (4th Cir. 1992) ......................................................... 6

*Morgan v. Rohr, Inc.*,
  No. 20-CV-574-GPC-AHG, 2023 WL 7713582 (S.D. Cal. Nov. 15,
  2023) ..................................................................................... 20

*Morrow v. Navy Fed. Credit Union*,
  No. 21-2323, 2022 WL 2526676 (4th Cir. July 7, 2022).................... 6

*Murphy v. Nat'l Collegiate Athletic Ass'n, —— U.S. ——*,
  138 S. Ct. 1461, 200 L.Ed.2d 854 (2018) ....................................... 18

*Nationwide Biweekly Administration, Inc. v. Superior Court*,
  9 Cal. 5th 279 (2020) .................................................................. 15

*Nedlloyd Lines B.V. v. Superior Court*,
  3 Cal. 4th 459, 11 Cal. Rptr. 2d 330, 834 P.2d 1148 (1992) ........... 16

*Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*,
  148 F.3d 396 (4th Cir. 1998) ......................................................... 6

*Parks Sch. of Bus. v. Symington*,
  51 F.3d 1480 (9th Cir. 1995) ......................................................... 3

*Paulus v. Bob Lynch Ford, Inc.*,
  139 Cal. App. 4th 659, 43 Cal.Rptr.3d 148 (2006)........................... 13

*Pitzer Coll. v. Indian Harbor Ins. Co.*,
  8 Cal. 5th 93, 251 Cal. Rptr. 3d 701, 447 P.3d 669 (2019) ............. 16

*Podwall v. Robinson*,
  No. 216CV06088ODWAGRX, 2021 WL 4441975 (C.D. Cal. Sept.
  28, 2021) ................................................................................... 4

*Polaris Indus. Inc. v. Albright*,
  143 S. Ct. 2612 (2023)................................................................. 20

*Prop & Cas. Ins. Co. v. Zenith Aviation, Inc.*,
  336 F.Suppp. 3d 607 (E.D. Va. 2018) ............................................. 6

*Rothman v. Equinox Holdings, Inc.*,
  No. 220CV09760CASMRWX, 2021 WL 1627490 (C.D. Cal. Apr.
  27, 2021) ................................................................................... 20

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Rubenstein v. Neiman Marcus,*
      687 Fed. Appx. 564 (9th Cir. 2017) .................................................. 12, 13

*San Diego Branch of Nat'l Ass'n for Advancement of Colored People v.*
*Cnty. of San Diego,*
      No. 16-CV-2575 JLS (MSB), 2019 WL 329539 (S.D. Cal. Jan. 25,
      2019) ....................................................................................................... 21

*Sanchez v. Valencia Holding Co., LLC,*
      61 Cal. 4th 899, 190 Cal. Rptr. 3d 812, 353 P.3d 741 (2015) ........................ 16

*Santisas v. Goodin,*
      17 Cal. 4th 599, 951 P.2d 399 (1998) ..................................................... 21

*Schmitt v. SN Servicing Corp.,*
      No. 21-CV-03355-WHO, 2021 WL 5279822 (N.D. Cal. Nov. 12,
      2021) ....................................................................................................... 13

*Sigwart v. U.S. Bank*
      713 F. App'x 535 (9th Cir. 2017) .................................................... 2, 4, 5

*Sonner v. Premier Nutrition Corp.,*
      971 F.3d 834 (9th Cir. 2020) ........................................................... 19, 20

*Stewart v. Screen Gems-EMI Music, Inc.,*
      81 F.Supp.3d 938 (N.D. Cal. 2015) ...................................................... 14

*Transcomp Sys., Inc. v. P.C. Scale, Inc.,*
      2009 WL 10672599 (C.D. Cal. Feb. 23, 2009) .......................................... 4

*Varga v. Am. Airlines Fed. Credit Union,*
      No. CV 20-4380 DSF (KSX), 2020 WL 8881747
      (C.D. Cal. Dec. 1, 2020) ....................................................................... 18

*Ward v. Crow Vote LLC,*
      634 F. Supp. 3d 800 (C.D. Cal. 2022) ................................................... 12

*Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.,*
      178 F.Supp.2d 1099 (C.D. Cal. 2001) ................................................... 14

*White v. Wachovia Bank, N.A.,*
      563 F. Supp. 2d 1358 (N.D. Ga. 2008) ................................................. 12

*Williams v. Gerber Products Co.,*
      552 F.3d 934 (9th Cir. 2008) ............................................................... 13

*Zeiger v. WellPet LLC,*
      526 F. Supp. 3d 652 (N.D. Cal. 2021) ................................................... 20

**STATUTES**

Cal. Bus. & Prof. Code. § 17200 ................................................................ 12

Cal. Civ. Code § 1717 ............................................................................... 21

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

## **OTHER AUTHORITIES**

15 Williston on Contracts, § 44:52 ................................................................. 4

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

## I.    <u>INTRODUCTION</u>

Plaintiff Andrew King challenges a "junk" fee practice used by Defendant Navy Federal Credit Union ("NFCU") to assess fees when an attempted deposit fails. NFCU charges so-called Returned Checks, Deposited or Cashed Fees ("RCDC Fees") on deposits that are attempted into their NFCU accounts, but which fail because they could not be processed against the originator's account. While NFCU may rightfully charge RCDC Fees in certain circumstances, it may not do so when *nothing actually happened*: when (as occurred with Plaintiff's attempted deposits) no funds from an attempted deposit were ever made available on an account, NFCU never had to recoup such funds from an accountholder, and indeed where the attempted deposit was never actually "Deposited or Cashed."

As the Consumer Financial Protection Bureau (CFPB) recently recognized, RCDC Fees are inherently unfair, deceptive, and unlawful because "a consumer depositing a check would normally be unaware of and have little to no control over whether a check originator has funds in their account, will issue a stop payment instruction, or has closed the account." *See* Dkt. No. 20-1 ("Ex. A"). For that reason, the CFPB explicitly stated it considers such fees "unfair" under the federal Consumer Financial Protection Act—*regardless* of whether such fees were adequately disclosed by the financial institution. Here, not only does NFCU charge these inherently unfair fees, but it misrepresents the circumstances in which it will do so.

In moving to dismiss, NFCU's central argument is that a notice provision bars Plaintiff's claims. But Plaintiff explicitly alleges he complied with the provision by calling NFCU *twice* to seek a refund of the fee. Am. Compl. ¶ 38. NFCU asks that this Court make findings of fact regarding what was and was not said during those conversations based on the pleadings alone. But even if such findings were proper at this stage (they are not), Mr. King's request for a refund complied with the notice

provision by providing NFCU an opportunity to cure the breach. No additional pre-suit notice was required.

More fundamentally, however—and as demonstrated by Mr. King's experience—strict compliance with the provision would have been futile. As the Ninth Circuit has held, "[i]f notice . . . would serve no practical purpose, a plaintiff is excused from complying with [a notice] provision." *Sigwart v. U.S. Bank,* 713 F. App'x 535, 537 (9th Cir. 2017). (internal quotation omitted). This lawsuit does not concern one $15 fee assessed in error, but instead concerns millions of dollars of such fees assessed repeatedly and intentionally on NFCU accountholders. Notice "would serve no practical purpose" when NFCU was no doubt aware of its own, intentional policy to assess RCDC fees even when no funds were "Deposited or Cashed," as demonstrated by NFCU's insistence that such fees were assessed in accordance with its Account Agreement.

Indeed, NFCU also argues that RCDC fees are unambiguously authorized by its contract. But NFCU's contract only authorizes it to charge $15 RCDC Fees in a single circumstance: when NFCU provides money to an accountholder for a deposited check before it clears, that check later bounces, and NFCU must recoup those funds from the accountholder. But, as happened to Plaintiff, NFCU charges the RCDC Fee even when it never provided money to an accountholder and never had to recoup those funds from an accountholder. Rather, NFCU charges the RCDC Fee each time an accountholder merely *attempts* to unsuccessfully deposit a check. The latter is barred by the contract, as explained herein.

Finally, *even if* the contract disclosed such fees (it does not), such fees violate the Consumer Financial Protection Act and the Consumer Financial Protection Bureau's regulatory guidance interpreting that Act, which is independently actionable under the UCL's "unlawful" prong. Similarly, RCDC Fees are "unfair" under the UCL because they are not reasonably avoidable by the accountholder, and cause

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

accountholders substantial monetary injury. Additionally, NFCU's disclosures regarding such fees violate the "fraudulent" prong of the UCL in that they affirmatively mislead accountholders as to the circumstances under which the fee will be charged.

For each of these reasons, the Motion should be denied.

## II.   FACTUAL BACKGROUND

In July 2022, Plaintiff King attempted to deposit a check into his NFCU account. Am. Compl. ¶ 36. To Plaintiff's surprise, and by no fault of his own, Plaintiff's attempted deposit failed, and Plaintiff was charged a $15.00 RCDC Fee on August 1, 2022. *Id*. ¶ 37.

## III.   LEGAL STANDARD

The Court must take "all allegations of material fact as true and construe[] them in the light[] most favorable to the nonmoving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

## IV.   ARGUMENT

### A.   Though Unnecessary, Plaintiff Complied with the Notice Provision

NFCU primarily argues that a notice provision bars Plaintiff's claims. Plaintiff now pleads, however, that he complied with the notice provision by calling NFCU on two separate occasions to seek a refund, and both times he was denied. Am. Compl. ¶ 38. NFCU asks this Court to hold that Mr. King's conversations with the Credit Union did not comply with its notice provision because such conversations allegedly did not contain sufficient legalese. Mot. at 6-7 (Citing nothing, NFCU asserts, "[Mr. King] did not tell NFCU he believed the assessment of the fee violated the Account Agreement or the UCL, how it supposedly violated the Account Agreement or the UCL, or that he would sue if NFCU failed to 'cure' the unstated violations—much less provide a deadline by which he would file suit."). This is uncorroborated nonsense. There is no

doubt NFCU was aware Mr. King wanted the fee refunded, and notice was provided.[1] In any event, what was and was not said in the conversations where Mr. King made these requests is not yet in the record. *See Podwall v. Robinson,* No. 216CV06088ODWAGRX, 2021 WL 4441975, at *3 (C.D. Cal. Sept. 28, 2021) (At summary judgment, declining to dismiss breach of contract claim based on conversation between the Parties because a reasonable jury could find that the plaintiff complied with the provision).

Even if discovery ultimately proves NFCU correct as to the content of these conversations, as the Ninth Circuit has recognized, the purpose of a notice provision is "to give the allegedly breaching party an opportunity to cure its breach." *Sigwart,* 713 F. App'x at 537. Here, a "cure of its breach" is a refund of the RCDC fee. NFCU was provided with the opportunity to "cure the breach" by refunding Mr. King's fee, twice, and declined. Seeking a refund provided NFCU with the requisite opportunity to cure the breach, and complied with the notice provision. At the very least, this is a triable issue of fact. *See, e.g., Transcomp Sys., Inc. v. P.C. Scale, Inc*., 2009 WL 10672599, at

---

[1] Mr. King's refund requests at least *substantially* complied with the notice provision. "The general rule with respect to what performance is required when a contract is made for the agreed exchange of two performances, one of which is to be rendered first, is not strict, literal and exact compliance with the terms of the contract but rather only substantial compliance or substantial performance." 15 Williston on Contracts, § 44:52 (citing cases). "Under the doctrine, minor or technical breaches of a contract are excused, not because the breaching party could not have performed completely but because the performance was so similar or close to that required under the contract that the failure to perform exactly results in an immaterial breach, the nonbreaching party having gotten substantially what it bargained for." *Id*., p. 2; *Ewing v. K2 Prop. Dev., LLC*, 2018 WL 4852159, at *3 (S.D. Cal. Oct. 4, 2018); *FNBN Rescon I, LLC v. Citrus El Dorado, LLC*, 725 F. App'x 448, 452 (9th Cir. 2018) (Noting doctrine of substantial performance applies to contractual conditions precedent).

*4 (C.D. Cal. Feb. 23, 2009) (triable issue of fact as to whether party substantially complied with notice provision).[2]

Moreover, even if Plaintiff's attempt to receive a refund is deemed unsatisfactory "notice," the provision is unenforceable due to futility. A plaintiff need not comply with a notice provision if notice "would serve no practical purpose." *Sigwart,* 713 F. at 537; *see also Kivett v. Flagstar Bank*, 333 F.R.D. 500, 504 (N.D. Cal. 2019), *vacated and remanded sub nom on other grounds*, *Kivett v. Flagstar Bank, FSB,* No. 21-15667, 2022 WL 1553266 (9th Cir. May 17, 2022) ("[T]his order pauses to note that even if the notice-and-cure provision applied here, the failure of absent class members to comply with the notice-and-cure provision is excusable on the ground of futility."); *Lussoro v. Ocean Fin. Fed. Credit Union*, 456 F. Supp. 3d 474, 482 (E.D.N.Y. 2020) ("The Court finds that enforcing strict compliance with the notice-and-cure provision would be useless with respect to the alleged error in this case, given that Defendant was aware of the charges[.]"); *Giuffre Hyundai, Ltd. v. Hyundai Motor Am.,* 756 F.3d 204, 209 (2d Cir. 2014) (Holding it "will not require strict compliance with a contractual notice-and-cure provision if providing an opportunity to cure would be useless[.]").

This lawsuit does not concern one $15 fee assessed in error, for which a one-time refund might cure the breach, but instead concerns the repeated and systematic

---

[2] NFCU relies on two cases from the commercial context, both of which involved sophisticated business entities and negotiated contracts. *See IP Glob. Invs. Am., Inc. v. Body Glove IP Holdings, LP,* No. 217CV06189ODWAGR, 2018 WL 5983550, at *6 (C.D. Cal. Nov. 14, 2018), *amended*, No. 217CV06189ODWAGR, 2019 WL 121191 (C.D. Cal. Jan. 7, 2019); *Keysight Techs., Inc. v. Mentor Graphics Corp.,* No. C 17-05222 SBA, 2017 WL 7310781, at *7 (N.D. Cal. Sept. 28, 2017). Those cases are hardly analogous to the circumstance here, which involves an unsophisticated accountholder and a form contract. Put simply, Mr. King should not need a law degree to comply with NFCU's contract; his request for a refund provides NFCU with the requisite opportunity to cure.

assessment of millions of dollars of such fees on NFCU accountholders. NFCU was fully aware of its own, intentional policy to assess RCDC fees in the manner that it did—and argues still today that such fees complied with its Account Agreement. There is no reason to believe the credit union would have taken any other position pre-litigation. Nor can NFCU argue it would have cured the breach for Mr. King when it was already provided the opportunity to refund him and refused to do so. Compliance under such circumstances would have been useless.

### B.    Plaintiff States a Claim for Breach of Contract

Virginia's breach of contract elements include: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Morrow v. Navy Fed. Credit Union*, No. 21-2323, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022).[3] When interpreting a contract, the court's ultimate purpose "is to give effect to the parties' mutual intent" as expressed in the contract's plain language. *Allied Prop. & Cas. Ins. Co. v. Zenith Aviation, Inc.*, 336 F. Supp. 3d 607, 611 (E.D. Va. 2018). A motion to dismiss may be granted in a contract dispute only "where an agreement is complete on its face and is plain and unambiguous in its terms." *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 405 (4th Cir. 1998). If a contract is ambiguous, however, its meaning is a question of fact that precludes dismissal on the pleadings. *See Martin Marietta.* 991 F.2d at 97. An ambiguity exists when "reasonable men… may reach reasonable, but opposite, conclusions" regarding the meaning of the disputed provision. *Caldwell v. Transportation Ins. Co.*, 364 S.E.2d 1 (1988).

---

[3] The elements of a breach of contract claim under California law are essentially the same. *See First Com. Mortg. Co. v. Reece,* 89 Cal. App. 4th 731, 745, 108 Cal. Rptr. 2d 23, 33 (2001).

Here, the contract documents at issue promise that an RCDC Fee will only be assessed when NFCU provides money to an accountholder for a check, that check later bounces, and NFCU must recoup those funds from the accountholder.

The only document explicitly referencing the RCDC Fee is the Fee Schedule, which cryptically states:

Returned checks, deposited or cashed ……………………………. $ 15.00

Am. Compl., Ex. C.

In qualifying "returned checks" with the phrase "deposited or cashed," the sparse Fee Schedule language makes clear that only returned checks that have *also* been "deposited or cashed" are eligible for the $15 fee—in other words, merely "returning" a check alone does not give rise to a fee. A check must have been "deposited or cashed" *and* returned in order to give rise to a fee.

The question then becomes: what is the meaning of "deposited or cashed"? In common usage, to "cash" a check is to give your bank a check *and* receive physical cash in return; a bank provides cash and the accountholder walks out the door with it, such that the funds are no longer in the bank's control. "Deposited" has an analogous common meaning: to provide your bank a check and to receive access to and actually use the funds deposited. In short, the terms "deposited or cashed" must refer *what the bank does* (provide the funds) and not merely what the accountholder does (present the bank a check). Here, while Plaintiff did indeed present his bank a check, NFCU indisputably never provided Plaintiff access to his attempted deposit in cash or otherwise and Plaintiff never used any portion of it.[4] The check was therefore never "deposited or cashed."

_____

[4] NFCU seems to concede in a footnote that it never provided access to the entirety of the attempted deposit, stating that it provided access to $225 of Plaintiff's $38,000 attempted deposit. *See* Mot., at n. 5. Whether that amount was ever provided is a matter

The question posed by this contract dispute is this: is a check reasonably considered "cashed or deposited" under the Fee Schedule based on what the *customer* does alone or what the *bank* does? The contract language dictates the latter. The following hypothetical illustrates the absurdity of NFCU's position. A NFCU customer walks into a branch and attempts to cash a check. The bank teller examines the check, and then hands it back, explaining that it cannot be cashed because it is undated. May NFCU then charge the customer a $15 fee for attempting to cash an un-cashable check? No consumer would expect to be charged a fee in such a circumstance, since indisputably no "deposit" or "cashing" took place. Nothing more than an attempt took place.

In Plaintiff's view, a "deposited or cashed" check is one that has, in fact, been "deposited or cashed," and not one that a customer merely *attempted* to "deposit or cash." In NFCU's view, "deposited or cashed" means "any time you show us a check." But that is not the contract it wrote. Indeed, NFCU's understanding of the Fee Schedule would make the words "deposited or cashed" redundant, because NFCU would be free to charge a fee any time a check is simply "returned." Contracts should be read to avoid redundancy. *Babcock & Wilcox Co. v. Areva NP, Inc.,* 292 Va. 165, 198 n. 32 (2016) ("In interpreting contracts, effect should be given to every part of the instrument, if possible, and no part thereof should be discarded as superfluous or meaningless.") (internal quotation omitted).

Other provisions of the contract reinforce Plaintiff's understanding. The Membership agreement states:

NFCU reserves the right to:

• accept or reject any check presented;

---

for discovery, but even if true it would be irrelevant, since the Fee Schedule does not say an RCDC Fee will be charged for a "partial" deposit.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    • revoke any settlement with respect to a check accepted by us, and to

2    charge back to your account the amount of the check based on the return

3    of the check or a receipt of notice of non-payment of the check, or claim

4    a refund for such credit[.]

5    Am. Compl., Ex. B at 10.

6        These provisions make clear what is already obvious as a matter of common

7    sense: merely "presenting" a check to NFCU does not mean it has been "deposited or

8    cashed," since the bank can always decide to "accept or reject" the check, which is

9    exactly what it did with respect to Plaintiff's attempted deposit.

10       Moreover, this provision—entirely ignored by NFCU in its Motion—makes

11   clear that merely "accepting or rejecting" a check is *distinct from* "charging back" or

12   recouping funds as a result of "rejecting" a check. This is crucial because, as discussed

13   above, the Fee Schedule makes clear that it is not just the "returning" of a check that

14   allows an RCDC Fee to be assessed. Rather, only a returned check that has been

15   "deposited or cashed" can incur such a fee. This provision elucidates that those terms

16   refer to the situation where funds have been provided (in cash or otherwise) and the

17   recoupment of funds by the credit union is necessary.

18       So, while it is clear that NFCU exercised its "right" to "accept or reject" the

19   deposit that Plaintiff attempted, the Fee Schedule makes clear that merely exercising

20   this right to reject a check does not alone give rise to an RCDC Fee. That fee is

21   dependent on whether NFCU exercises its *separate* right to "revoke…settlement,"

22   "charge back…the amount," or "claim a refund" for the deposit attempted by Plaintiff.

23   It never did any of these things.

24       First, the full check was never credited to the account. Therefore, there was no

25   need to "revoke settlement," since "settlement" had never occurred. Second, even if

26   NFCU conditionally provided $225 as it alleges in a footnote (again, discovery is

27   necessary on this question), it did so only for a brief instant, and Plaintiff alleges he

28

never used even a penny of those supposedly provided funds. As such, NFCU could not possibly have "charg[ed] back" or "claim[ed] a refund" for anything. All it did was exercise its right to "accept or reject" a check for deposit—something the Fee Schedule makes clear is not alone enough to give rise to a RCDC Fee.

In the end, what occurred to Plaintiff shows why the RCDC Fee as implemented by NFCU is a nonsense "junk" fee: he attempted to deposit a check he had no reason to believe was in any way defective. NFCU never provided him any money for that deposit, and he therefore never used a penny of that attempted deposit. In short, *nothing happened in the real world*, except the administrative task of rejecting an attempted deposit—no different than if a teller had simply handed back an undated check. Charging a fee in that instance is nowhere authorized by NFCU's contract.

NFCU argues that since "the Account Agreement expressly divorces the concept of a 'deposit' from funds availability," Mot., 4, every *attempted* deposit is automatically considered "deposited" as that term is used in the Fee Schedule. According to NFCU, then, even in cases like Plaintiff's where he was indisputably never provided unconditional access to any of the deposit (much less the full amount of the deposit in any form) and indisputably never used even a penny of the attempted deposit, his check was considered "deposited" for purposes of fee assessment by NFCU at the moment Plaintiff gave NFCU a check. That position, while conveniently allowing NFCU to charge RCDC Fees on every *attempted deposit*, is not plausible. It is not plausible as a matter of common sense, since merely giving a check to a bank cannot possibly mean it had been "deposited or cashed" (as discussed above). It is not plausible as a matter of overall contract interpretation, since as described above NFCU's right to return a check is conceptually different from its right to "charge back" or recoup funds from a deposit. And it is not even a plausible reading of the Funds Availability provisions NFCU relies on.

1    In the case of "Checks $225 and Over," for example, the Membership
2  Agreement states that the first $225 is made available on or before the first business
3  day **after the deposit is received**.  Am. Compl., Ex. B at 9 (emphasis added). And it
4  states the "remaining funds will be available on the second Business Day after the day
5  we are considered to have **received your deposit**. *Id*. (emphasis added). While the
6  phrase "received" or "receiving a deposit" might reasonably refer to the moment when
7  an accountholder hands a check to NFCU, the provision does not say that merely
8  "receiving" a deposit means a check has actually been deposited or cashed. Indeed, that
9  cannot be true under the contract for the reasons described above, including that NFCU
10 always has the right to reject such a deposit attempt.

11    In fact, the Funds Availability section relied upon by NFCU never attempts to
12 define when a "deposit" occurs. And far from "expressly divorc[ing] the concept of a
13 'deposit' from funds availability," the provisions above inextricably *link* funds
14 availability with deposits, warning customers that merely providing a check to NFCU
15 does not mean a deposit will actually occur. The provisions above are better understood
16 as stating a deposit does not occur until funds are made available—not presenting some
17 "conceptual" distinction between deposits and funds availability.

18    In sum, if NFCU wanted to provide itself with the contractual authority to charge
19 an RCDC any time it rejected an attempted deposit, it could easily have done so, if it
20 informed customers it would charge a fee on all unsuccessful attempted deposits. But
21 that's not the contract it wrote.

22  **C.    Plaintiff States a Claim for Breach of the Implied Covenant of Good**
23  **       Faith and Fair Dealing**

24    "In Virginia, every contract contains an implied covenant of good faith and fair
25 dealing." *Enomoto v. Space Adventures, Ltd*., 624 F. Supp. 2d 443, 450 (E.D. Va. 2009)
26 (internal citations omitted). Here, NFCU violated the implied covenant because it
27 abused discretion it reserved to itself in bad faith by charging fees on returned checks
28

even when it never provided money to an accountholder.  NFCU has discretion as to when to charge fees and exercised that discretion in bad faith. Multiple courts have recognized that similar allegations provide a basis for a breach of the implied covenant. *See, e.g., In re HSBC Bank*, 1 F. Supp. 3d 34, 54 (E.D.N.Y. 2014); *Gutierrez v. Wells Fargo & Co.,* 622 F. Supp. 2d 946, 953 (N.D. Cal. 2009). At the very least, whether NFCU acted in bad faith is a fact issue unsuitable for adjudication on a motion to dismiss. *See White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358, 1364 (N.D. Ga. 2008); *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1317 (S.D. Fla. 2010).

### D.     Plaintiff States a Claim Under the UCL

Irrespective of whether Plaintiff states a claim for breach of contract, Plaintiff states a claim under the UCL. The UCL is a remedial statute that prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code. § 17200. The UCL's coverage is "sweeping" and "intentionally broad" to allow "courts maximum discretion to prohibit new schemes to defraud." *In re First Alliance Mortg. Co.,* 471 F.3d 977, 995 (9th Cir. 2006) (citations omitted). The UCL is governed by the reasonable consumer standard and "it is a 'rare situation in which granting a motion to dismiss is appropriate.'" *Rubenstein v. Neiman Marcus,* 687 Fed. Appx. 564, 566 (9th Cir. 2017). Here, NFCU violates all three prongs of the statute.

### 1.     NFCU Violates the "Unlawful" Prong

NFCU's conduct violates the Consumer Financial Protection Act ("CFPA") and corresponding CFPB guidance, which serve as the predicate violations of the "unlawful" prong of the UCL. *Ward v. Crow Vote LLC,* 634 F. Supp. 3d 800, 827 (C.D. Cal. 2022) ("[A] violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong."). "[V]irtually any law or regulation—federal or state, statutory or common law—can serve as [a] predicate for a [UCL] 'unlawful'

1   violation." *Paulus v. Bob Lynch Ford, Inc.*, 139 Cal. App. 4th 659, 681, 43 Cal.Rptr.3d
2   148 (2006) (citation omitted).

3         Contrary to NFCU's argument, a violation of the CFPA and CFPB guidance
4   interpreting the CFPA may serve as predicate violations of the UCL. Indeed, in an
5   analogous circumstance, the Ninth Circuit concluded that FTC guidance—which
6   interprets the FTC Act, but like CFPB guidance does not by itself have the force and
7   effect of law—may serve as a predicate violation of the UCL. *See Rubenstein*, 687 F.
8   App'x at 567 (concluding FTC guides—which do not provide a right of action—may
9   serve as UCL predicate offense); *see also Schmitt v. SN Servicing Corp.,* No. 21-CV-
10  03355-WHO, 2021 WL 5279822, at *5 (N.D. Cal. Nov. 12, 2021) (plaintiff "may
11  predicate her UCL unlawful claim on the FTC Act and FTC guidelines."); *Inga v.*
12  *Bellacor.com, Inc.,* No. 219CV10406MWFMRW, 2020 WL 5769080, at *3 (C.D. Cal.
13  July 17, 2020) (Relying on FTC guidance in interpreting FTC Act, which formed
14  predicate offense of UCL). For the same reasons FTC guidance and violations of the
15  FTC Act may form the basis for a predicate UCL claim, so too can CFPB guidance and
16  a violation of the CFPA. This is an independent reason to deny the motion to dismiss,
17  even in the unlikely event the Court grants the motion with respect to the breach of
18  contract claim.

19        **2.**     **NFCU Violates the "Fraudulent" Prong**

20        Plaintiff adequately alleged conduct that is "fraudulent." To state a claim under
21  the UCL, a plaintiff need only allege that "members of the public are likely to be
22  deceived." *In re Tobacco II Cases*, 46 Cal. 4th 298, 312, 207 P.3d 20, 29 (2009); *see*
23  *also Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Relief under
24  the "UCL is available without individualized proof of deception, reliance and injury*."*
25  *Id.* at 320. Plaintiff alleges NFCU misleads its members in its Account Documents as
26  to the circumstances under which RCDC Fees will be assessed. Where, as here, a
27  plaintiff has adequately alleged conduct that is unfair or fraudulent, a breach of contract

28

may form the predicate for a UCL claim. *See Stewart v. Screen Gems-EMI Music, Inc.*, 81 F.Supp.3d 938, 967 (N.D. Cal. 2015) ("[A] plaintiff may bring a UCL claim even where it overlaps with a concurrently brought breach of contract and breach of the implied covenant of good faith and fair dealing claim."); *Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F.Supp.2d 1099, 1117 n. 12 (C.D. Cal. 2001) (same). Indeed, numerous court have held that when a financial institution misleads its accountholders in account documents as to the circumstances in which fees will be assessed, such is sufficient to support a claim under the UCL. *See Gutierrez v. Wells Fargo Bank*, 704 F.3d 712, 727-28 (9th Cir. 2012); *see also Lloyd v. Navy Fed. Credit Union*, No. 17-CV-1280-BAS-RBB, 2018 WL 1757609, at *15 (S.D. Cal. Apr. 12, 2018).

### 3.    NFCU Violates the "Unfair" Prong

"[A]n 'unfair' business practice occurs when the practice 'offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Candelore v. Tinder, Inc.*, 19 Cal. App. 5th 1138, 1155-56 (2018). The standard for an "unfair" practice in a consumer action is intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud. *Id.* at 1155.

There is a split of authority as to which of three tests to use to evaluate whether a practice is "unfair" under the UCL: the balancing test, tethering test, or FTC test.

First, the balancing test "involves an examination of [the business practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. The court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim . . .." *Candelore*, 19 Cal. App. 5th at 1155.

Here, the utility of NFCU's conduct is greatly outweighed by the harm to consumers. The "motive" of charging RCDC Fees is simply profit, and the "impact"

1   is that consumers are forced to pay fees which they have no ability to control and
2   cannot reasonably avoid. *See* Ex. A ("Blanket policies of charging Returned
3   Deposited Item fees to consumers for all returned transactions irrespective of the
4   circumstances of the transaction or patterns of behavior on the account are likely
5   unfair."). There is no "utility" in charging such fees.

6         Second, the tethering test is met here, which requires that "the public policy
7   which is a predicate to [a consumer unfair competition action under the 'unfair' prong
8   of the UCL] must be tethered to a specific constitutional, statutory, or regulatory
9   provisions." *Nationwide Biweekly Administration, Inc.*, 9 Cal. 5th at 303 n.10 (internal
10  quotation marks omitted). One of the public policies that is the predicate to Plaintiff's
11  "unfair" prong claim is the CFPB's objective of prohibiting fees which are not
12  "reasonably avoidable." *See* Ex. A ("[C]onsumers have limited ability to bargain over
13  specific fee terms in selecting deposit accounts, and consumers are charged these fees
14  in circumstances beyond their control[.]"). Thus, the tethering test is also met.

15        Likewise, the FTC test is also met. The FTC Test requires that "(1) [t]he
16  consumer injury must be substantial; (2) the injury must not be outweighed by any
17  countervailing benefits to consumers or competition; and (3) it must be an injury that
18  consumers themselves could not reasonably have avoided." *Nationwide Biweekly*
19  *Administration, Inc.*, 9 Cal. 5th at 303 n.10. (internal quotation marks omitted). As the
20  CFPB has explained, all three prongs are met. Ex. A. The fees charged by NFCU are
21  substantial, costing consumers $15 for each check. The fees are also not reasonably
22  avoidable, because a consumer has no control or insight into whether a check will
23  bounce or not. Finally, there are no countervailing benefits to consumers. The fee
24  cannot possibly deter conduct given that whether a check is returned is not in the
25  control of the individual depositing it.

26  ///
27  ///
28

### 4.   California Law Applies to Plaintiff's UCL Claim

NFCU references a contractual choice of law provision to argue that Plaintiff's UCL claim should be dismissed. Mot. at 14.  As a preliminary matter, "Courts have declined to conduct such an analysis at the motion to dismiss stage where further development of the record is necessary to properly decide the choice-of-law question." *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1170 (N.D. Cal. 2019).

Nevertheless, California law applies to Plaintiff's statutory claims. Federal courts "must apply 'the forum state's choice of law rules to determine the controlling substantive law.'" *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005). Under California law, a contractual choice of law provision generally governs unless (1) it conflicts with a state's fundamental public policy, and (2) that state has a materially greater interest in the determination of the issue than the contractually chosen state. *Pitzer Coll. v. Indian Harbor Ins. Co.*, 8 Cal. 5th 93, 93, 251 Cal. Rptr. 3d 701, 703, 447 P.3d 669, 671 (2019); *see also Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 465- 66, 11 Cal. Rptr. 2d 330, 834 P.2d 1148 (1992).

Applying this test, the Court should not enforce the Virginia choice-of-law provision as to the UCL claim because doing so would be contrary to the fundamental policy of California which allows consumers to seek relief from unfair and deceptive business practices on a classwide basis. *See, e.g.*, *Lloyd*, 2018 WL 1757609, at *1 (declining to dismiss the plaintiff's UCL claim on basis of identical choice of law provision because provision conflicted with a fundamental policy of the state of California); *see also Sanchez v. Valencia Holding Co.*, *LLC*, 61 Cal. 4th 899, 917, 190 Cal. Rptr. 3d 812, 826, 353 P.3d 741, 753 (2015) ("[T]he public has a strong interest in ensuring that fraudulent business practices are enjoined."); *America Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 15, 108 Cal. Rptr. 2d 699, 710 (2001) ("Virginia's law provides significantly less consumer protection to its citizens than California law

provides for our own."); *Aral v. Earthlink, Inc.*, 134 Cal. App. 4th 544, 564, 36 Cal. Rptr. 3d 229, 244 (2005) *abrogated on other grounds by AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).

   ***This exact same issue*** was analyzed by Judge Cynthia Bashant in the Southern District of California in another case challenging NFCU's fee policies. In *Lloyd*, Judge Bashant held NFCU's choice of law provision was unenforceable as to the plaintiff's UCL claim. *See Lloyd*, 2018 WL 1757609, at *6. In a thorough analysis, the court concluded the UCL reflects "multiple fundamental policies of the state of California aimed at protecting California consumers with which [the contractually chosen state law's] conflicts." *Id.* at *5. For example, the UCL permits consumers to obtain relief via class action, whereas Virginia's consumer protection law does not. *Id.*; *see also America Online*, 90 Cal. App. 4th at 15. The court further held "California has a 'stronger interest' in protecting its consumers through its chosen statutory scheme for doing so, which 'permits its injured consumers not only to bring class actions to recover their losses.'" *Id.* at *6 (emphasis in original). The court therefore declined to apply the contractual choice of law clause to the plaintiff's statutory claims. This Court should do the same.[5]

   Finally, just as the *Lloyd* court held, California has a materially greater interest in the adjudication of this issue because "California has a stronger interest in protecting *its* consumers through its chosen statutory scheme for doing so[.]" *Id.* at *6 (internal citation omitted).

///

///

---

[5] *Lambert v. Navy Fed. Credit Union*, 2019 WL 3843064 (E.D. Va. Aug. 14, 2019) is inapplicable because in that case, the court applied Virginia's choice of law rules, not California's, and did not analyze whether Virginia law conflicted with a fundamental policy of the state of California, as previously analyzed by the court in *Lloyd*.

### 5.    Plaintiff's UCL Claim Is Not Preempted

NFCU acknowledges that Plaintiff's breach of contract claim is not preempted, nor is Plaintiff's UCL claim to the extent it is based on NFCU's misrepresentations in its account documents. This is likely because courts roundly reject preemption defenses regarding such claims. *See, e.g., Gutierrez,* 704 F.3d at 727 (finding that claims "based on Wells Fargo's misleading statements about its posting method" under the fraudulent prong of the UCL were not preempted because that law "does not impose disclosure requirements but merely prohibits statements that are likely to mislead the public."); *Varga v. Am. Airlines Fed. Credit Union*, No. CV 20-4380 DSF (KSX), 2020 WL 8881747, at *5 (C.D. Cal. Dec. 1, 2020) ("[A]ffirmative misrepresentation claims are not federally preempted, even if the result of those claims may affect a federal credit union's fee disclosures.") (quoting *Lambert*, 2019 WL 3843064, at *2); *Lussoro*, 456 F. Supp. 3d at 489 (finding no preemption); *In re Checking Acct. Overdraft Litig.,* 694 F. Supp. 2d at 1313 (same); *In re TD Bank, N.A.*, 150 F. Supp. 3d 593, 610 (D.S.C. 2015) (same).

Nor are Plaintiff's UCL claims alleging a violation of the "unfair" or "unlawful" prongs preempted. Plaintiff's UCL claim for "unlawful" and "unfair" conduct is premised on allegations that NFCU's conduct violates *both* state and federal law *for the very same reasons*.  Put differently, preemption is at issue when a state law contradicts or usurps a federal law. *See generally In re HSBC,* 1 F. Supp. 3d at 44 (*citing Barnett Bank of Marion Cty., N.A. v. Nelson*, 517 U.S. 25, 32 (1996).). "The basic principle is as follows: 'If federal law imposes restrictions or confers rights on private actors and a state law confers rights or imposes restrictions *that conflict with* the federal law, the federal law takes precedence and the state law is preempted.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.,* 959 F.3d 1201, 1211 (9th Cir. 2020) (quoting *Murphy v. Nat'l Collegiate Athletic Ass'n,* —— U.S. ——, 138 S. Ct. 1461, 1480, 200 L.Ed.2d 854 (2018)) (emphasis added). But here,

federal law is entirely ***consistent*** with Plaintiff's interpretation of state law, because the CFPB has already deemed these same fees to be unfair under federal law. *See* Ex. A. Indeed, unlike each of the opinion letters cited by NFCU, in which a state law specifically targeting a bank fee was found to be preempted, here, Plaintiff seeks to employ state law in a manner entirely consistent with federal guidance and federal law.

The Ninth Circuit's opinion in *Gutierrez*, 704 F.3d 712 is not to the contrary. In that case, after a trial in which the court enjoined Wells Fargo from posting transactions from high-to-low, the Ninth Circuit held that the plaintiff's claim under the "unfair" prong of the UCL was preempted because "[d]esignation of a posting method falls within the type of overarching federal banking regulatory power that is not normally limited by, but rather ordinarily pre-empt[s], contrary state law." *Id.* at 723 (internal quotation omitted); *see also id.* at 725 (Holding UCL "unfair" claim "is preempted when applied in a manner that prevents or significantly interferes with a national bank's federally authorized power to choose a posting order."). Importantly, in that case, no federal law or guidance dictated that it was "unfair" to post transactions from high-to-low. Instead, federal law stated the opposite: that a bank was free to choose its own posting order, provided the bank's disclosures regarding its posting order were clear and not misleading.

Here, to the contrary, there is no federally-conferred right to charge RCDC Fees. Instead, the opposite is true: the CFPB has made clear that the blanket imposition of RCDC Fees is categorically "unfair" under the CFPA. *See* Ex. A. There simply is no preemption when federal law prohibits the exact same conduct as state law, for the same reasons.

> ### 6.   ***Sonner* Does Not Bar Plaintiff's UCL Claim, or In the Alternative, the Court Should Remand Plaintiff's UCL Claim**

Courts in the Ninth Circuit have opined that "[*Sonner v. Premier Nutrition Corp.*] has limited applicability to the pleading stage because it pertained to

circumstances in which a plaintiff dropped all damages claims on the eve of trial, and as such, 'provides limited guidance for pleading claims for legal and equitable relief.'" *Jeong v. Nexo Fin. LLC*, No. 21-CV-02392-BLF, 2022 WL 174236, at *27 (N.D. Cal. Jan. 19, 2022) (collecting cases); *Rothman v. Equinox Holdings, Inc.,* No. 220CV09760CASMRWX, 2021 WL 1627490, at *12 (C.D. Cal. Apr. 27, 2021) (Declining to apply *Sonner* at pleadings stage). *Guzman v. Polaris Indus. Inc.,* 49 F.4th 1308, 1315 (9th Cir. 2022), which was decided at summary judgment, did not fundamentally change this precedent.

Additionally, Plaintiff's request for equitable relief—in the form of an injunction—is prospective, not retrospective, in nature. Money damages would be inadequate to provide relief against future harm. *See, e.g., IntegrityMessageBoards.com v. Facebook, Inc.,* No. 18-CV-05286-PJH, 2020 WL 6544411, at *8 (N.D. Cal. Nov. 6, 2020) ("plaintiff may pursue its equitable claims for injunctive and declaratory relief to the extent it premises them on future harm."); *accord Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1121 (C.D. Cal. 2021); *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021).

Finally, in the event the Court determines *Sonner* does bar Plaintiff's claims, this Court should exercise its discretion to remand Plaintiff's UCL claim to state court, just as Judge Curiel did recently in *Morgan v. Rohr, Inc.,* No. 20-CV-574-GPC-AHG, 2023 WL 7713582, at *1 (S.D. Cal. Nov. 15, 2023). In a thorough and well-reasoned opinion, Judge Curiel relied on *Guzman* to hold that when, as here, a case was originally filed in state court and then removed, and when a district court determines it lacks equitable jurisdiction to adjudicate a UCL claim under *Sonner*, the appropriate remedy is to partially remand the UCL claim to state court. This Court should do the same.

### E. Plaintiff Can Recover Attorneys' Fees

NFCU's contract contains a unilateral fee shifting provision in the event NFCU seeks to collect any "negative or overdrawn amount" owed pursuant to the contract.

*See* Compl., Ex. B at 34. Under California law, this provision must be interpreted to be mutual. Cal. Civ. Code § 1717 (West); *see also Santisas v. Goodin*, 17 Cal. 4th 599, 611, 951 P.2d 399, 406 (1998). Any attempt to waive this provision is void by law. *Id*. Thus, Plaintiff is entitled to reasonable attorneys' fees if he prevails in this action, which concerns the collection of amounts owed to him pursuant to the contract.[6]

At a minimum, whether or not Plaintiff is entitled to attorneys' fees is premature. *San Diego Branch of Nat'l Ass'n for Advancement of Colored People v. Cnty. of San Diego*, No. 16-CV-2575 JLS (MSB), 2019 WL 329539, at *14 (S.D. Cal. Jan. 25, 2019) ("The Court agrees with Plaintiffs that '[i]t is premature to rule on Plaintiffs' request for attorneys' fees.'").

## IV.   **CONCLUSION**

The Court should deny Defendant's Motion in its entirety.

Dated: December 13, 2023                    **KALIELGOLD. PLLC**

                                      By: */s/ Sophia Goren Gold*
                                      JEFFREY D. KALIEL
                                      SOPHIA G. GOLD
                                      AMANDA J. ROSENBERG

                                      *Attorneys for Plaintiff and the Putative Classes*

---

[6] NFCU argues that this provision is inapplicable here because it only applies to contractual liens that NFCU places on an accountholder's account. Obviously, an accountholder cannot place a "lien" on NFCU to collect attorneys' fees. The fact that the *mechanism* NFCU uses to collect its attorneys' fees in the event of a collection action is a "lien" does not prevent a fee shifting provision from being applied mutually.

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,914 words, which complies with the word limit of L.R. 11-6.1.

Dated: December 13, 2023                     **KALIELGOLD. PLLC**

                                        By:<u>*/s/ Sophia Goren Gold*</u>
                                        JEFFREY D. KALIEL
                                        SOPHIA G. GOLD
                                        AMANDA J. ROSENBERG

                                        *Attorneys for Plaintiff and the Putative Classes*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT