Jason J. Kim (State Bar No. 221476)
kimj@HuntonAK.com
Hakop Stepanyan (State Bar No. 296782)
hstepanyan@HuntonAK.com
Marcus E. Nelson (State Bar No. 347650)
mnelson@HuntonAK.com
**HUNTON ANDREWS KURTH LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone:  (213) 532-2000
Facsimile:  (213) 532-2020

Attorneys for Defendant
NAVY FEDERAL CREDIT UNION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| ANDREW KING, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NAVY FEDERAL CREDIT UNION and DOES 1-50, inclusive,<br><br>Defendants. | Case No.:  2:23−cv−05915 SPG (AGRx)<br><br>Hon. Sherilyn Peace Garnett<br><br>**DEFENDANT NAVY FEDERAL CREDIT UNION'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:      January 17, 2024<br>Time:      1:30 p.m.<br>Crtm:      5C<br><br>Complaint Filed:   June 21, 2023<br>Date of Removal:  July 21, 2023<br>FAC Filed:           November 2, 2023 |

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    PLAINTIFF FAILS TO STATE ANY VIABLE CAUSE OF ACTION ........... 2

       A.    Plaintiff Fails To Overcome The Notice-And-Cure Provision ................. 2

       B.    Plaintiff's Breach Of Contract Claim Independently Fails ...................... 6

             1.    Plaintiff Cannot Overcome The Plain Language Of The
                   Account Agreement ........................................................................ 6

             2.    Plaintiff Fails To Allege Any Bad Faith By Navy Federal ............. 8

       C.    Plaintiff's UCL Claim Independently Fails ............................................ 9

             1.    Plaintiff Fails To Allege He Lacks An Adequate Legal
                   Remedy ............................................................................................ 9

             2.    The UCL Claim Is Preempted ...................................................... 10

             3.    The UCL Claim Is Barred By The Account Agreement's
                   Choice-Of-Law Provision............................................................. 11

             4.    Plaintiff Fails To Allege The Predicate Conduct For A UCL
                   Violation ....................................................................................... 12

III.   PLAINTIFF'S ATTORNEYS' FEES REQUEST SHOULD BE
       DISMISSED .................................................................................................... 14

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

DEFENDANT NAVY FEDERAL CREDIT UNION'S REPLY IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.C.C.S. v. Nielsen*,
2019 WL 7841860 (C.D. Cal. Sept. 17, 2019) .................................................. 14

*Abat v. Chase Bank USA, N.A.*,
738 F. Supp. 2d 1093 (C.D. Cal. 2010) ........................................................... 12

*Albayero v. Wells Fargo Bank, N.A.*,
2011 WL 4748341 (E.D. Va. 2011) .................................................................. 8

*Allen Beth Inc. v. Waste Connections US, Inc.*,
2023 WL 5431605 (E.D. Ark. Aug. 23, 2023) .................................................. 5

*In re Apple Inc. Device Performance Litig.*,
386 F. Supp. 3d 1155 (N.D. Cal. 2019) ........................................................... 11

*In re Checking Acct. Overdraft Litig.*,
694 F. Supp. 2d 1302 (S.D. Fla. 2010) ............................................................ 8

*ChromaDex, Inc. v. Elysium Health, Inc.*,
2020 WL 1279236 (C.D. Cal. Jan. 16, 2020) ............................................... 2, 4

*Demaria v. Big Lots Stores - PNS, LLC*,
2023 WL 6390151 (E.D. Cal. Sept. 29, 2023) ............................................... 10

*Favell v. Univ. of S. Cal.*,
2023 WL 4680357 (C.D. Cal. July 5, 2023) .................................................. 10

*Gerber v. First Horizon Home Loans Corp.*,
2006 WL 581082 (W.D. Wash. Mar. 8, 2006) .............................................. 2, 5

*Gibson v. Jaguar Land Rover N. Am., LLC*,
2020 WL 5492990 (C.D. Cal. Sept. 9, 2020) .................................................. 9

*Giotta v. Ocwen Loan Servicing, LLC*,
706 F. App'x 421 (9th Cir. 2017) .................................................................... 3

*Giuffre Hyundai, Ltd. v. Hyundai Motor Am.*,
756 F.3d 204 (2d Cir. 2014) ........................................................................... 5

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

ii

*Gutierrez v. Wells Fargo & Co.*,
   622 F. Supp. 2d 946 (N.D. Cal. 2009)..................................................8

*Gutierrez v. Wells Fargo Bank, NA*,
   704 F.3d 712 (9th Cir. 2012) ...............................................................10

*Guzman v. Polaris Indus. Inc.*,
   49 F.4th 1308 (9th Cir. 2022) ..............................................................9

*In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.*,
   1 F. Supp. 3d 34 (E.D.N.Y.) .................................................................8

*IP Glob. Invs. Am., Inc. v. Body Glove IP Holdings, LP*,
   2018 WL 5983550 (C.D. Cal. Nov. 14, 2018) .....................................1

*Jang v. Sagicor Life Ins. Co.*,
   2017 WL 7369874 (C.D. Cal. Nov. 9, 2017) .......................................15

*Johnson v. Trumpet Behavioral Health, LLC*,
   2022 WL 74163 (N.D. Cal. Jan. 7, 2022).............................................9

*Keysight Techs., Inc. v. Mentor Graphics Corp.*,
   2017 WL 7310781 (N.D. Cal. Sept. 28, 2017)......................................3

*Kim v. Walmart, Inc*,
   2023 WL 196919 (C.D. Cal. Jan. 13, 2023).........................................10

*Kivett v. Flagstar Bank*,
   333 F.R.D. 500 (N.D. Cal. 2019) .........................................................5

*Lisner v. Sparc Grp. LLC*,
   2021 WL 6284158 (C.D. Cal. Dec. 29, 2021).......................................9

*Lloyd v. Navy Fed. Credit Union*,
   2018 WL 1757609 (S.D. Cal. Apr. 12, 2018) .......................................12

*Lussoro v. Ocean Fin. Fed. Credit Union*,
   456 F. Supp. 3d 474 (E.D.N.Y. 2020)...............................................5, 10

*McCraner v. Wells Fargo & Co.*,
   2023 WL 2728719 (S.D. Cal. Mar. 30, 2023).......................................9

*Monaco v. Bear Stearns Companies, Inc.*,
   2011 WL 11027559 (C.D. Cal. Jan. 13, 2011)......................................13

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

iii

*Morgan v. Rohr, Inc.*,
   2023 WL 7713582 (S.D. Cal. Nov. 15, 2023).....................................10

*Neagle v. Goldman Sachs Grp., Inc.*,
   2019 WL 1102199 (D. Or. Mar. 1, 2019) ...........................................4

*Nedlloyd Lines B.V. v. Super. Ct.*,
   3 Cal. 4th 459 (1992) ...........................................................12

*O'Donnell v. Bank of Am., Nat. Ass'n*,
   504 F. App'x 566 (9th Cir. 2013)..................................................13

*Orthopaedic & Spine Ctr. v. Muller Martini Mfg. Corp.*,
   61 Va. App. 482 (2013) ...........................................................6

*Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*,
   148 F.3d 396 (4th Cir. 1998) .....................................................6

*Podwall v. Robinson*,
   2021 WL 4441975 (C.D. Cal. Sept. 28, 2021) .............................2, 3, 4

*Pulte Home Corp. v. Am. Safety Indem. Co.*,
   268 F. Supp. 3d 1091 (S.D. Cal. 2017) ..........................................12

*Rivera v. Jeld-Wen, Inc.*,
   2022 WL 3702934 (S.D. Cal. Feb. 4, 2022).......................................9

*Rodriguez v. FCA US LLC*,
   2023 WL 3150075 (C.D. Cal. Mar. 21, 2023) ....................................9

*Rothwell v. Old Dominion Freight Line, Inc.*,
   2017 WL 6021325 (C.D. Cal. Nov. 22, 2017) ...................................15

*San Diego Branch of Nat'l Ass'n for Advancement of Colored People v.
   Cnty. of San Diego*,
   2019 WL 329539 (S.D. Cal. Jan. 25, 2019) .....................................15

*Sanchez-Knutson v. Ford Motor Co.*,
   2016 WL 11783302 (S.D. Fla. July 25, 2016) ...................................5

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010).............................................................12

*Sigwart v. U.S. Bank*,
   713 F. App'x 535 (9th Cir. 2017)................................................4

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

iv

*Smith v. Flagstar Bank, FSB*,
  2018 WL 3995922 (N.D. Cal. Aug. 21, 2018) .................................... 4

*Sperling v. DSW Inc.*,
  2016 WL 354319 (C.D. Cal. Jan. 28, 2016) ...................................... 13

*Sperling v. DSWC, Inc.*,
  699 F. App'x 654 (9th Cir. 2017) ................................................... 13

*Transcomp Sys., Inc. v. P.C. Scale, Inc.*,
  2009 WL 10672599 (C.D. Cal. Feb. 23, 2009) .................................. 3

*Varga v. Am. Airlines Fed. Credit Union*,
  2020 WL 8881747 (C.D. Cal. Dec. 1, 2020) .................................... 13

*White v. Wachovia Bank, N.A.*,
  563 F. Supp. 2d 1358 (N.D. Ga. 2008) ............................................ 8

*Whittington v. Mobiloil Fed. Credit Union*,
  2017 WL 6988193 (E.D. Tex. Sept. 14, 2017) ................................ 10

*Wilde v. Flagstar Bank FSB*,
  2019 WL 1099841 (S.D. Cal. Mar. 8, 2019) .................................... 4

**Statutes**

28 U.S.C. § 1447(c) ...................................................................... 10

Cal. Civ. Code § 1638 .................................................................... 6

**Other Authorities**

12 C.F.R. Part 1074 (Appendix A) ............................................ 11, 13

16 C.F.R. § 1.5 ............................................................................ 13

Fed. R. Civ. P. 23 ........................................................................ 12

NCUA Op. Letter 04-0147, 2004 WL 5245382 (Feb. 2004) ................ 14

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

DEFENDANT NAVY FEDERAL CREDIT UNION'S REPLY IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT

# I.     **INTRODUCTION**

Plaintiff did not comply with the notice-and-cure provision in the Account Agreement merely by "complaining about the [RCDC] fee and attempt[ing] to receive a refund of the fee." FAC ¶ 38.  And his opposition does not persuade otherwise:

*First*, Plaintiff concedes he did not "sufficiently identify the breach at issue" when he allegedly called Navy Federal.  *IP Glob. Invs. Am., Inc. v. Body Glove IP Holdings, LP*, 2018 WL 5983550, at *5 (C.D. Cal. Nov. 14, 2018).  Indeed, Plaintiff claims that would amount to "legalese" beyond the capabilities of a layperson.  But the Account Agreement simply asks Plaintiff to inform Navy Federal what it did wrong and why.  And expressing general displeasure with the fee does not do that.

*Second*, and relatedly, Plaintiff seeks to excuse his admitted noncompliance by claiming he is an "unsophisticated accountholder."  Even if Plaintiff cited authorities that recognized that excuse (and he does not), it still falls flat.  *Plaintiff is represented by counsel who presumably reviewed the Account Agreement and who could have provided the requisite notice*.  The failure to do so here is inexcusable.

*Third*, Plaintiff claims it is premature to resolve the notice-and-cure issue now.  But the Court has rejected this argument already, in line with the multitude of other courts, including the Ninth Circuit, that have dismissed similar claims based on the failure to allege compliance with this very provision.  *See* ECF No. 19 at 6-7.  As before, there are no factual disputes that otherwise might prevent immediate resolution, as Navy Federal has accepted Plaintiff's infirm allegations as true for purposes of this motion.

*Fourth*, and yet again, Plaintiff claims compliance with the notice-and-cure provision would have been futile.  Plaintiff, however, cannot speculate as to what Navy Federal would or would not have done if given the choice between full-blown litigation in federal court and a $15 refund.  Nor can Plaintiff ignore the "other purposes of giving notice besides allowing for cure of the alleged breach, including to allow [Navy Federal] the opportunity to ... reduce damages, … and negotiate

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT NAVY FEDERAL CREDIT UNION'S REPLY IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT

settlements, and also inform[] [Navy Federal] of the need to preserve evidence and to be prepared to defend against the suit, and protect[] against stale claims." *ChromaDex, Inc. v. Elysium Health, Inc.*, 2020 WL 1279236, at *4 (C.D. Cal. Jan. 16, 2020) (quotations omitted).

Similarly, Plaintiff cannot claim futility simply because he seeks to represent a putative class. "Plaintiff had no standing then (or even now) as a certified class representative, so how he might have been treated in that 'role' before he had even filed his suit has no relevance for purposes of this analysis." *Gerber v. First Horizon Home Loans Corp.*, 2006 WL 581082, at *2 (W.D. Wash. Mar. 8, 2006).

As to the remaining defects in Plaintiff's complaint, he merely rehashes the same arguments he made during the last go-round. And they fare no better here.

Plaintiff had ample opportunity to allege facts showing compliance with the Account Agreement's notice-and-cure provision. At this juncture, it is obvious he cannot do so. The Court, therefore, should dismiss this lawsuit with prejudice.

## II. PLAINTIFF FAILS TO STATE ANY VIABLE CAUSE OF ACTION

### A. Plaintiff Fails To Overcome The Notice-And-Cure Provision

As the Court previously held, the "notice-and-cure provision applies both to Plaintiff's cause of action for breach of contract and Plaintiff's UCL cause of action," and Plaintiff does not claim otherwise. ECF No. 19 at 6. Rather, Plaintiff claims he now has alleged compliance with the provision and that compliance is futile in any event. Plaintiff is wrong on both counts.

*First*, Plaintiff claims he complied with the provision by calling Navy Federal to complain about the fee and to request a refund. As set forth in the moving papers, however, that does not amount to proper notice. Indeed, Plaintiff does not even claim he told Navy Federal it allegedly violated the Account Agreement. He simply complained about the fee. That will not do.

The cases cited by Plaintiff only serve to underscore his noncompliance. In *Podwall v. Robinson*, 2021 WL 4441975, at *3 (C.D. Cal. Sept. 28, 2021), unlike

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

here, the plaintiff specified what the contract required and how the defendant breached it: "[Podwall] told Robinson that, '[O]ur contract stipulated that after a specific date, that I was owed money from touring, so it was more that—The contract kicked in. You owe me money from touring starting in June of 20 ... 2013,' and that Robinson owed him '10 percent of touring, as pursuant to our contract.'"  Similarly, in *Transcomp Sys., Inc. v. P.C. Scale, Inc.*, 2009 WL 10672599, at *4 (C.D. Cal. Feb. 23, 2009), the defendants "described the basis for their claims" and even "gave some damages amounts."  Here, Plaintiff fails to allege that he specified what the Account Agreement allegedly required, much less how Navy Federal breached it.

Seemingly acknowledging his allegations fall short, Plaintiff attempts to distract the Court with a straw argument—namely, that Navy Federal insists that any notice "contain sufficient legalese."  Not so.  The Account Agreement asks little of Plaintiff—simply to notify Navy Federal why assessment of the fee was improper. *Keysight Techs., Inc. v. Mentor Graphics Corp.*, 2017 WL 7310781, at *6-7 (N.D. Cal. Sept. 28, 2017).  Indeed, Plaintiff cites a case in which a non-lawyer specified the precise terms of a contract and why the defendant violated them.  *Podwall*, 2021 WL 4441975, at *3 (cited in Opp. at 4:3-4).  Plaintiff has no excuse why he could not do so here.

Even worse, *Plaintiff is represented by counsel who presumably reviewed the Account Agreement before rushing to file this lawsuit*.  Plaintiff fails entirely to explain why his lawyers could not have provided Navy Federal with proper notice and an opportunity to cure on his behalf.  Plaintiff's claims of unsophistication ring hollow, and they do not excuse his noncompliance.[1]

*Second*, Plaintiff again asks the Court to punt on the issue, claiming it is premature to decide compliance with the provision.  But the Court has already rejected

---

[1] Plaintiff alternatively claims he substantially complied with the notice-and-cure provision.  But Plaintiff does not cite a single case supporting that claim.  In fact, the law holds otherwise.  *See, e.g., Keysight Techs., Inc.*, 2017 WL 7310781, at *7 ("At most, Keysight's emails expressed dissatisfaction with Mentor's efforts …").

3

1   this argument, and nothing has changed since then.  *See*  ECF No. 19 at 6-7 (rejecting

2   Plaintiff's "argument that granting the Motion to Dismiss based on failure to comply

3   with the notice-and-cure provision would be premature").

4        Plaintiff claims discovery is necessary to resolve "what was and was not said in

5   the conversations where Mr. King made these requests."  Opp. at 4:2-3.  Not so.

6   Plaintiff knows what he allegedly told Navy Federal, and the Court gave Plaintiff

7   ample opportunity to plead any such facts.  Unlike the *Podwall* case cited by Plaintiff,

8   there are no factual disputes that need to be resolved, as Navy Federal accepted

9   Plaintiff's allegations as true for purposes of this motion.  *Id.* at 4:3-7.  As before, this

10  issue is ripe for resolution, and the Court should decide it now.[2]

11       *Third*, Plaintiff again claims compliance with the notice-and-cure provision is

12  futile.  It is not.  As an initial matter, Plaintiff cannot speculate that Navy Federal

13  would have opted for full-blown litigation in lieu of a $15 refund.  *Neagle v. Goldman*

14  *Sachs Grp., Inc.*, 2019 WL 1102199, at *4 (D. Or. Mar. 1, 2019) (rejecting similar

15  futility argument:  "Guessing what [Navy Federal] would have done had [Plaintiff]

16  provided notice is purely speculative").  By rushing to file suit, Plaintiff deprived

17  Navy Federal of the "opportunity to ... reduce damages … and negotiate settlements."

18  *ChromaDex, Inc.*, 2020 WL 1279236, at *4.  Plaintiff fails entirely to address—much

19  less overcome—these authorities.

20       Similarly, as expected, Plaintiff cites *Sigwart v. U.S. Bank*, 713 F. App'x 535

21  (9th Cir. 2017).  As set forth in the motion, however, the bank in *Sigwart* "no longer

22  held title to the property" and therefore could not cure the alleged breach.  *Id.* at 537.

23  Here, on the other hand, Navy Federal had the ability to provide Plaintiff a $15 refund.

24

25

26  [2] This Court is not alone.  Numerous courts, including the Ninth Circuit, have
    dismissed claims for failure to allege compliance with this precise provision.  *See,*
27  *e.g.*, *Giotta v. Ocwen Loan Servicing, LLC*, 706 F. App'x 421, 422 (9th Cir. 2017);
    *Wilde v. Flagstar Bank FSB*, 2019 WL 1099841, at *3 (S.D. Cal. Mar. 8, 2019); *Smith*
28  *v. Flagstar Bank, FSB*, 2018 WL 3995922, at *3–4 (N.D. Cal. Aug. 21, 2018).

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

4

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1    Likewise, Plaintiff cannot excuse his failure to comply by hiding behind

2 unknown individuals whom he purports to represent.  Opp. at 5-6 (arguing that this

3 case "concerns the repeated and systematic assessment of millions of dollars of such

4 fees on NFCU accountholders").  "Plaintiff had no standing then (or even now) as a

5 certified class representative, so how he might have been treated in that 'role' before

6 he had even filed his suit has no relevance for purposes of this analysis." *Gerber*,

7 2006 WL 581082, at *2.  In any event, "pre-suit notice and the opportunity to cure

8 [must] be met as to each class member," and Plaintiff makes no showing to the

9 contrary.  *Sanchez-Knutson v. Ford Motor Co.*, 2016 WL 11783302, at *4 (S.D. Fla.

10 July 25, 2016); *see also Allen Beth Inc. v. Waste Connections US, Inc.*, 2023 WL

11 5431605, at *3 (E.D. Ark. Aug. 23, 2023) ("The elimination of potential class-wide

12 liability does not show that notice would have been futile.").

13    Plaintiff cites *Kivett v. Flagstar Bank*, 333 F.R.D. 500 (N.D. Cal. 2019).[3]  In

14 that case, however, the Court found the "failure of absent class members to comply

15 with the notice-and-cure provision is excusable on the ground of futility" because

16 "Flagstar has never shown a single instance of curing after receiving notice" and "both

17 plaintiff Kivett and the Smiths gave notice and Flagstar refused to cure." *Id.* at 504.

18 Unlike *Kivett*, Plaintiff cannot show he gave proper notice, much less that Navy

19 Federal received proper notice from innumerable unknown individuals that it ignored.[4]

20    Once again, Plaintiff has not shown compliance with the Account Agreement's

21 notice-and-cure provision.  Having had ample opportunity to plead compliance, it is

22 obvious Plaintiff cannot do so.  The Court should dismiss with prejudice.

23

24

25 ───────────────

[3] The Court has already rejected Plaintiff's futility argument based on *Kivett*.  ECF
26 No. 19 at 6.

27 [4] Plaintiff cites to two additional cases that were decided under "New York common
law" and are therefore inapplicable.  *Lussoro v. Ocean Fin. Fed. Credit Union*, 456 F.
28 Supp. 3d 474, 482 (E.D.N.Y. 2020); *Giuffre Hyundai, Ltd. v. Hyundai Motor Am.*, 756
F.3d 204, 209 (2d Cir. 2014).

DEFENDANT NAVY FEDERAL CREDIT UNION'S REPLY IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT

### B.   Plaintiff's Breach Of Contract Claim Independently Fails

#### 1.   Plaintiff Cannot Overcome The Plain Language Of The Account Agreement

Plaintiff claims Navy Federal breached the Account Agreement because "[n]o contract provision authorizes Navy Federal to charge [RCDC] Fees even on attempted deposits even when no actual deposit took place."  FAC ¶¶ 56-57.  As set forth in the Motion, the Account Agreement dispels Plaintiff's manufactured definition of the term "deposit"—*i.e.*, that the term "deposit" means "to deposit an item and to receive use of the funds deposited in exchange"—because the Funds Availability provisions expressly divorce the concept of a "deposit" from funds availability.

In response, Plaintiff claims the Funds Availability provisions "inextricably link funds availability with deposits, warning customers that merely providing a check to Navy Federal does not mean a deposit will actually occur."  Opp. at 11.  That interpretation does not follow from the plain language of the Account Agreement.  *See* Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."); *Orthopaedic & Spine Ctr. v. Muller Martini Mfg. Corp.*, 61 Va. App. 482, 490 (2013) ("[W]hen the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning.").[5]

As set forth in the Motion, the Funds Availability provisions expressly contemplate that "deposits" generally occur before—and separately from—a member's access to and use of deposited funds.  Plaintiff has not shown otherwise.

For example, Plaintiff claims that in qualifying "returned checks" with the phrase "deposited or cashed," the Fee Schedule makes clear that returned checks that

---

[5] The authority cited by Plaintiff is consistent: "where an agreement is complete on its face and is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself."  *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 405 (4th Cir. 1998).

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

have been "deposited or cashed" are eligible for the RCDC fee.  Opp. at 4.  That is what occurred here:  Plaintiff "deposited" a check that later was "returned."

Further, in an attempt to manufacture the "common usage" of the term "deposit," Plaintiff now claims it means "to provide your bank a check and to receive access to and actually use the funds deposited."  Opp. at 7.  Notably, Plaintiff's initial definition of "deposit" was "to deposit an item and to receive use of the funds deposited in exchange."  FAC ¶ 21.  After Navy Federal pointed out that in the case of "Checks $225 and Over," the Account Agreement states that the first $225 is made available on or before the first business day after the deposit is received (FAC, Exh. B at 9), Plaintiff added "actually use the funds deposited" to the definition.[6]

Plaintiff's new definition of "deposit" results in an absurd interpretation, as the term now has *four* elements that require multiple, separate acts by Plaintiff and Navy Federal:  (1) Plaintiff must deposit money, (2) Navy Federal must make the deposited funds available to Plaintiff, (3) Plaintiff must subsequently withdraw the funds, and (4) Plaintiff must actually spend the money.[7]  In other words, "deposit" actually means "withdrawal" *plus* three other elements.  Plaintiff's proposed definition strains credulity, and the Court should decline to adopt it.  Indeed, Plaintiff cites no authority for either the definition in the FAC or his new definition—both of which are contradicted by the usage of the term "deposit" in the Account Agreement.  *See* FAC., Exh. B at 8 (Navy Federal's "general procedure is to make funds available from your deposits on or before the first business day after the day we receive your deposit.").

Similarly, Plaintiff points to language in the Account Agreement addressing check rejections and chargebacks.  Opp. at 8-9.  But that provision simply affords

---

[6] After being given an opportunity to amend, Plaintiff does not allege he did not have access to any funds.  Nor does Plaintiff allege that "he never used even a penny of those supposedly provided funds," as he claims in his Opposition.  Opp. at 9-10.  Regardless, neither access to funds nor use of the funds is necessary for a deposit.
[7] Under Plaintiff's proposed interpretation, Navy Federal cannot reliably determine every instance in which a "deposit" occurs because it cannot account for every instance in which a member spends money.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Navy Federal the right to charge back funds that it previously made available to a member. FAC, Exh. B at 10. It does not mention the term "deposit," much less define it in the manner Plaintiff advocates.

Ultimately, Plaintiff's various attempts at rewriting the contract to which he agreed fall flat. The breach of contract claim should be dismissed.

### 2. Plaintiff Fails To Allege Any Bad Faith By Navy Federal

Plaintiff claims Navy Federal violated the implied covenant of good faith and fair dealing by exercising its discretion to charge RCDC fees in bad faith. Opp. at 8-9. Not so. Navy Federal simply followed the Account Agreement.

The overdraft cases (tellingly, Plaintiff cites no RCDC cases) cited by Plaintiff are readily distinguishable and illustrate the lack of any bad faith here. In *In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34 (E.D.N.Y.), *Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946 (N.D. Cal. 2009), *White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358, 1361 (N.D. Ga. 2008), and *In re Checking Acct. Overdraft Litig.*, 694 F. Supp. 2d 1302, 1316 (S.D. Fla. 2010), the plaintiffs alleged that larger withdrawals were posted to their checking account before smaller ones so as to maximize the number of overdraft penalties that could be charged. In all of these cases, the account agreements gave the banks discretion to post items in any order the bank chose, and the plaintiffs claimed the banks acted in bad faith by choosing to post transactions from the largest to the smallest amount.

Here, there is no such exercise of discretion. Per the express terms of the Account Agreement, if a "deposited" check is "returned," a fee is charged. Accordingly, Plaintiff cannot state a claim for breach of the implied covenant of good faith and fair dealing. *See Albayero v. Wells Fargo Bank, N.A.*, 2011 WL 4748341, *6 (E.D. Va. 2011) ("[A] party does not violate the obligation to act in good faith by enforcing a contractual right.").

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT NAVY FEDERAL CREDIT UNION'S REPLY IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT

### C. **Plaintiff's UCL Claim Independently Fails**

#### 1. **Plaintiff Fails To Allege He Lacks An Adequate Legal Remedy**

Plaintiff cannot dispute he has an adequate legal remedy with respect to his request for restitution. Accordingly, the UCL claim fails as to restitution, and Plaintiff's attempt to persuade otherwise fail.

*First*, Plaintiff claims *Sonner* has "limited applicability" at the pleading stage because it involved a motion that was decided at a later stage in the litigation. Opp. at 19-20. But the "Ninth Circuit in *Guzman* [] confirmed that *Sonner* was not confined to its specific procedural posture." *Rodriguez v. FCA US LLC*, 2023 WL 3150075, at *4 (C.D. Cal. Mar. 21, 2023); *see also Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022) ("Nothing in *Sonner*'s reasoning suggested that its holding was limited to cases in which a party had voluntarily dismissed a damages claim to avoid a jury trial."); *Rivera v. Jeld-Wen, Inc.*, 2022 WL 3702934, at *12 (S.D. Cal. Feb. 4, 2022) (collecting cases); *McCraner v. Wells Fargo & Co.*, 2023 WL 2728719, at *8 (S.D. Cal. Mar. 30, 2023) ("*Sonner*'s holding applies regardless of a case's procedural posture"); *Johnson v. Trumpet Behavioral Health, LLC*, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022) (same); *Lisner v. Sparc Grp. LLC*, 2021 WL 6284158, at *8 (C.D. Cal. Dec. 29, 2021) (same); *Gibson v. Jaguar Land Rover N. Am., LLC*, 2020 WL 5492990, at *3 (C.D. Cal. Sept. 9, 2020) (same). "While Plaintiff[] cite[s] to [two] district courts that have found it premature to apply *Sonner's* reasoning at the pleading stage, the majority of district courts have held that *Sonner's* reasoning applies at the pleading stage." *Lisner*, 2021 WL 6284158, at *8 (collecting cases).

*Second*, Plaintiff claims money damages will not provide adequate prospective relief. Opp. at 20. Plaintiff, however, pleads no such facts. Rather, the sparse references to injunctive relief in his FAC reinforce the notion that legal remedies are adequate. *See, e.g.*, FAC ¶ 6 (seeking to "force [Navy Federal] to refund improper [RCDC] Fees"). Beyond that still, any request for injunctive relief is moot because

DEFENDANT NAVY FEDERAL CREDIT UNION'S REPLY IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT

Navy Federal no longer charges RCDC fees.  RJN, Exh. A (current fee schedule that removed RCDC fees).

*Third*, Plaintiff claims the Court should remand the UCL claim to state court in lieu of dismissal.  Plaintiff cites *Morgan v. Rohr, Inc.*, 2023 WL 7713582 (S.D. Cal. Nov. 15, 2023).  However, in *Morgan*, unlike here, "[t]he parties agree[d] that Plaintiffs' UCL claim should be heard in state court." *Id.* at *3.  Even more fundamental, *Morgan* is an outlier.  Courts have routinely held that "the lack of equitable jurisdiction is not a basis for remand when subject matter jurisdiction is present." *Favell v. Univ. of S. Cal.*, 2023 WL 4680357, at *2 (C.D. Cal. July 5, 2023); *see also Kim v. Walmart, Inc*, 2023 WL 196919, at *2 (C.D. Cal. Jan. 13, 2023) ("Remand is inappropriate because diversity jurisdiction exists, and the Court's authority to hear this case does not depend on its equitable powers."); *Demaria v. Big Lots Stores - PNS, LLC*, 2023 WL 6390151, at *8 (E.D. Cal. Sept. 29, 2023) (remand is not appropriate where "the Court has valid subject matter jurisdiction under CAFA").  Further, a request for remand "on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal." *Demaria*, 2023 WL 6390151, at *8 (citing 28 U.S.C. § 1447(c)).  Plaintiff's request to remand the UCL claim is therefore also untimely.

## 2.    The UCL Claim Is Preempted

Plaintiff claims his UCL claim is not preempted to the extent it is based on misrepresentations in the Account Agreement.  Opp. at 18.  As set forth in the Motion, "practices [that] were fully disclosed … are preempted." *Whittington v. Mobiloil Fed. Credit Union*, 2017 WL 6988193, at *10 (E.D. Tex. Sept. 14, 2017).[8]  Because Navy

---

[8] *Compare Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 725–26 (9th Cir. 2012) ("Wells Fargo directed misleading propaganda at the class that likely led class members to expect that the actual posting order of their debit-card purchases would mirror the order in which they were transacted."); *Lussoro*, 456 F. Supp. 3d at 488 ("Defendant misrepresented the circumstances under which an overdraft fee would be imposed.").

DEFENDANT NAVY FEDERAL CREDIT UNION'S REPLY IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1  Federal disclosed the RCDC fee in the Fee Schedule, Plaintiff cannot avoid

2  preemption on that basis.  FAC ¶ 21, Exh. C at 1.

3          Plaintiff also claims preemption should not apply to the "unfair" and "unlawful"

4  prongs of the UCL because the CFPB bulletin attached to the FAC allegedly deems

5  the imposition of RCDC fees to be unfair.  Opp. at 18-19.  As set forth in the Motion

6  (and completely unaddressed by Plaintiff), the CFPB's statements do "not confer any

7  rights of any kind" or "impose any new or revise any existing … disclosure

8  requirements."  FAC, Exh. A at 66942.  "Unlike a law or regulation, supervisory

9  guidance does not have the force and effect of law."  12 C.F.R. Part 1074 (Appendix

10  A).  The CFPB, therefore, specifically distinguished its supervisory guidance from

11  any enforceable law or regulation and disavowed any usage of its guidance for such a

12  purpose.  Indeed, the CFPB "does not take enforcement actions based on supervisory

13  guidance," and it has specifically cautioned that a financial institution cannot be

14  criticized for a "'violation' of or 'non-compliance' with supervisory guidance."  *Id.*

15  Plaintiff's reliance on the CFPB's supervisory guidance is misplaced.

16          **3.     The UCL Claim Is Barred By The Account Agreement's
              Choice-Of-Law Provision**

17

18          Plaintiff cannot escape the choice-of-law provision in the Account Agreement.

19  *First*, Plaintiff claims courts have declined to dismiss UCL claims where further

20  factual development is necessary.  Opp. at 16.  But Plaintiff fails to identify any facts

21  that need to be developed.  Unlike *In re Apple Inc. Device Performance Litig.*, 386 F.

22  Supp. 3d 1155, 1170 (N.D. Cal. 2019), Plaintiff attached the choice-of-law provision

23  to his Complaint, so there is no need to consider extraneous evidence.

24          *Second*, Plaintiff claims the choice-of-law provision conflicts with California's

25  policy on class actions, and that California has a greater interest in the determination

26  of the issue.  Opp. at 16-17.  Plaintiff is wrong.

27          The choice-of-law provision does not conflict with California's policy favoring

28  class actions.  As explained in the Motion, even if Virginia's analogous consumer

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

11

protection statute does not expressly provide for class actions, Rule 23 of the Federal Rules of Civil Procedure allows them.  As the United States Supreme Court has held, Rule 23 controls in such situations.  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010).

Nor does California have a greater interest in having its laws applied to this dispute.  Plaintiff's reliance on *Lloyd v. Navy Fed. Credit Union*, 2018 WL 1757609 (S.D. Cal. Apr. 12, 2018), is misplaced.  In *Lloyd*, plaintiffs sought to represent a sub-class of California residents with respect to their UCL claim.  *Id.* at *6.  Here, Plaintiff seeks to represent a nationwide class against a Virginia credit union.  *See Abat v. Chase Bank USA, N.A.*, 738 F. Supp. 2d 1093, 1095 (C.D. Cal. 2010) (UCL claim barred by Delaware choice-of-law clause); *Pulte Home Corp. v. Am. Safety Indem. Co.*, 268 F. Supp. 3d 1091, 1095 (S.D. Cal. 2017) (where "one of the contracting parties … had its principle place of business in the chosen state," there is a "substantial relationship" between the chosen state and the contracting parties"); *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 467 (1992) ("If one of the parties resides in the chosen state, the parties have a reasonable basis for their choice.").  Accordingly, there is no basis to exalt California's interest above Virginia or any other state in which putative class members might reside.  In light of the "strong policy favoring enforcement of [choice-of-law] provisions," the Court should enforce the choice-of-law provision in the Account Agreement and dismiss the UCL claim.  *Pulte Home Corp.*, 268 F. Supp. 3d at 1095.

### 4.    Plaintiff Fails To Allege The Predicate Conduct For A UCL Violation

Plaintiff claims a "violation" of CFPB supervisory guidance can serve as a predicate offense under the "unlawful" prong of the UCL, citing solely FTC-related decisions as anticipated in the Motion.  Opp. at 12-13.  But Plaintiff offers no rebuttal to the fact that in two separate instances, the Ninth Circuit upheld the dismissal of a UCL claim predicated on a violation of the FTC Act and FTC guidelines.  *See*

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

*O'Donnell v. Bank of Am., Nat. Ass'n*, 504 F. App'x 566, 568 (9th Cir. 2013) ("The district court rightly dismissed the unfair competition claim premised on Bank of America's alleged violation of the Federal Trade Commission Act.  The federal statute doesn't create a private right of action, and plaintiffs can't use California law to engineer one."); *Sperling v. DSW Inc.*, 2016 WL 354319, at *2 (C.D. Cal. Jan. 28, 2016) (finding plaintiff cannot predicate UCL claim on alleged violation of FTC regulations), aff'd sub nom. *Sperling v. DSWC, Inc.*, 699 F. App'x 654 (9th Cir. 2017).[9]

Moreover, there is a crucial distinction between the FTC and CFPB guidelines, which Plaintiff fails to address.  The "[f]ailure to comply with the [FTC] guides may result in corrective action by the Commission under applicable statutory provisions." 16 C.F.R. § 1.5.  In contrast, the CFPB "does not take enforcement actions based on supervisory guidance," and it has specifically cautioned that a financial institution cannot be criticized for a "'violation' of or 'non-compliance' with supervisory guidance."  12 C.F.R. Part 1074 (Appendix A).  Accordingly, Plaintiff cannot rely on a non-binding CFPB bulletin as a basis to claim "unlawful" conduct.

Further, as set forth in the Motion, Plaintiff also cannot plausibly plead "fraudulent" conduct because the Fee Schedule openly discloses the RCDC fee. Plaintiff offers no arguments to the contrary beyond the assertion he makes in defense of his failed contract claim.  Opp. at 13-14.  Plaintiff also fails to address the fact that he fails to plead reliance in any event, as he does not even claim to have read the Account Agreement.  *See Varga v. Am. Airlines Fed. Credit Union*, 2020 WL 8881747, at *6 (C.D. Cal. Dec. 1, 2020) (dismissing UCL claim because "[n]owhere in the FAC does Varga allege that she saw, read, or relied on any representations by AAFCU regarding its fee practices"); *Monaco v. Bear Stearns Companies, Inc.*, 2011

---

[9] As noted in the Motion, *Sperling* is more recent than the *Rubenstein* decision upon which Plaintiff relies.

13

WL 11027559 (C.D. Cal. Jan. 13, 2011) (no actual reliance where plaintiff failed to expressly state that he read or relied on the representations at issue).

Finally, in an apparent shift from the theory pled in the FAC, Plaintiff now claims RCDC fees are "unfair" because they have no utility and only serve to drive profits. Opp. at 14-15. However, as the Court previously recognized, Plaintiff cannot amend the FAC through his opposition papers. ECF No. 19 at 7 (citing *A.C.C.S. v. Nielsen*, 2019 WL 7841860, at \*7 (C.D. Cal. Sept. 17, 2019)). The UCL claim must fail on this basis alone.

Even still, setting aside that Navy Federal is a *not-for-profit* credit union serving members of the military,[10] Plaintiff's own allegations dispel any notion of "unfairness." Plaintiff simply disregards the fact that he admits "the return of a deposit causes real risk for the Credit Union" where, as here, funds are made available. FAC ¶ 25. Under Plaintiff's own theory, it is "fair" for Navy Federal to assess RCDC fees because it faces the "real risk" that it "must attempt to recoup" that $225 or "debit [those] funds from the account." *Id.* ¶ 25. For the reasons stated in the Motion and above, the Court should dismiss Plaintiff's UCL claim.

## III.   PLAINTIFF'S ATTORNEYS' FEES REQUEST SHOULD BE DISMISSED

Plaintiff maintains he can pursue a claim for attorneys' fees under the "Contractual Lien" provision in the Account Agreement—a provision having no bearing here whatsoever as it is expressly confined to the limited situation in which Navy Federal must "collect" on a "negative or overdrawn amount on any account." FAC, Exh. B at 7. Here, Plaintiff does not allege that Navy Federal sued Plaintiff to

---

[10] Unlike banks, "[c]redit unions are nonprofit cooperatives, owned by their members and democratically controlled, that may only lend and pay dividends to their members and, as such, are disinclined by their nature and structure to engage in the kinds of practices regarded as predatory or abusive." NCUA Op. Letter 04-0147, 2004 WL 5245382, \*2 (Feb. 2004).

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

"collect" on a "negative or overdrawn amount." The Account Agreement does not authorize either party to recover attorneys' fees in *this* situation.

Nor is it premature to rule on Plaintiff's request for attorneys' fees. In *San Diego Branch of Nat'l Ass'n for Advancement of Colored People v. Cnty. of San Diego*, 2019 WL 329539, at *14 (S.D. Cal. Jan. 25, 2019), the Court narrowly held that it was premature to decide whether attorneys' fees are recoverable under California's Private Attorney General Statute. That is not the basis for the attorneys' fees request here. Courts routinely dismiss, with prejudice, a request for attorneys' fees when there is no valid basis for such a request, as is the case here. *See*, *e.g.*, *Rothwell v. Old Dominion Freight Line, Inc.*, 2017 WL 6021325, at *3-4 (C.D. Cal. Nov. 22, 2017); *Jang v. Sagicor Life Ins. Co.*, 2017 WL 7369874, at *6 (C.D. Cal. Nov. 9, 2017).

Dated: December 22, 2023

**HUNTON ANDREWS KURTH LLP**

By: _____*/s/ Jason J. Kim*_____
      Jason J. Kim
      Hakop Stepanyan
      Marcus E. Nelson
    Attorneys for Defendant
    NAVY FEDERAL CREDIT UNION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant Navy Federal Credit Union, certifies that this brief contains 5,051 words, which:

 <u>X</u>  complies with the word limit of L.R. 11-6.1.

___ complies with the word limit set by court order dated [date].

Dated:  December 22, 2023          **HUNTON ANDREWS KURTH LLP**

By: _____*/s/ Jason J. Kim*_____
              Jason J. Kim
              Hakop Stepanyan
              Marcus E. Nelson
        Attorneys for Defendant
        NAVY FEDERAL CREDIT UNION

DEFENDANT NAVY FEDERAL CREDIT UNION'S REPLY IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT