# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW KING, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>NAVY FEDERAL CREDIT UNION and DOES 1-50, inclusive,<br><br>      Defendants. | Case No. 2:23-cv-05915-SPG (AGRx)<br><br>**ORDER GRANTING IN PART AND DENIING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [ECF NO. 21]** |

Before the Court is Defendant Navy Federal Credit Union's Motion to Dismiss Plaintiff's First Amended Complaint. (ECF No. 21 ("Motion")). Plaintiff timely opposed the Motion, and Defendant timely replied. (ECF No. 25 ("Opp."); ECF No. 26 ("Reply")). Having considered the parties' submissions, the relevant law, and the record in this case, the Court finds this matter suitable for resolution without a hearing. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, the Court hereby GRANTS in part and DENIES in part Defendant's Motion.

## I. BACKGROUND

### A. Factual Background

#### 1. Defendant's Returned Checks, Deposited or Cashed Fee

Defendant Navy Federal Credit Union provides retail banking services to consumers and businesses. (ECF No. 20 ("First Amended Complaint" or "FAC") ¶ 8). Plaintiff's First Amended Complaint concerns fees charged by Defendant following what is colloquially referred to as a 'bounced check,' or, in Plaintiff's words, "attempted deposits . . . that are returned unpaid because the deposit could not be processed against the originator's account." (*Id.* ¶ 12). Plaintiff contends that Defendant routinely charges a $15.00 Returned Checks, Deposited or Cashed Fee ("RCDC Fee") to its accountholders on such attempted deposits. (*Id.* ¶¶ 12, 19). According to Plaintiff, Defendant charges this Fee even "when [Defendant] NFCU incurs no loss from the returned transaction and indeed does not even make the funds available to accountholders at all . . . ." (*Id.* ¶ 20).

Attempted deposits may be "returned unprocessed" for a variety of reasons, including because "an originator may not have sufficient funds available in their account to pay the amount stated on the check; an originator may have directed the issuing depository institution to stop payment; the account referenced on the check may be closed or located in a foreign country; or there may be questionable, erroneous, or missing information on the check, including with respect to the signature, date, account number, or payee name." (*Id.* ¶ 13). Depositors cannot "verify with the originator's depository institution prior to depositing an item whether there are sufficient funds in the issuer's account for the item to clear" and generally "have no control over whether, and no reason to anticipate that, the attempted deposit or cashing would be returned." (*Id.* ¶ 14).

#### 2. Allegations Concerning Named Plaintiff King

Plaintiff maintains a personal checking account with Defendant. (*Id.* ¶ 35). In July 2022, Plaintiff attempted to deposit $38,206.65 into his account. (*Id.* ¶ 36). Through no fault of Plaintiff's, however, his attempted deposit failed, and on August 1, 2022, Plaintiff was charged a $15.00 RCDC Fee. (*Id.* ¶ 37). After incurring this fee, Plaintiff twice called

Defendant to complain about the RCDC fee and attempted to receive a refund. (*Id.* ¶ 38). Defendant declined to refund the RCDC fee both times. (*Id.*).

### 3. Relevant Contract Language

Plaintiff attached to his FAC, and thereby incorporated, the "Important Disclosures" Agreement ("Account Agreement") he entered into with Defendant. (ECF No. 20-2 (FAC Ex. B)). The Account Agreement contains a reservation of rights in which Defendant "reserves the right to:

- accept or reject any check presented;
- revoke any settlement with respect to a check accepted by us, and to charge back to your account the amount of the check based on the return of the check or a receipt of notice of non-payment of the check, or claim a refund for such credit; and
- require that the space reserved for endorsement by Navy Federal on the back of any check accepted for deposit be free and clear of any prior markings or endorsements."

(*Id.* at 8). The Account Agreement does not explicitly mention that Defendant charges the RCDC Fee when accountholders' attempted deposits are unsuccessful. (FAC ¶ 28). According to Plaintiff, this omission, when taken together with Defendant's reservation of rights, stands for the "fundamental premise" that "there will be no Returned Checks, Deposited or Cashed Fees assessed where the funds were not actually made available to the accountholder." (*Id.* ¶ 29). Under a section titled "Check Cashing," the Account Agreement further provides:

> If we cash a check for you that is drawn on another financial institution, we may withhold the availability of a corresponding amount of funds that are already in your account. Those funds will be available on the day they would have been available as though you had deposited the check.

(Account Agreement at 8). Under "Current Rates and Fees," the Agreement states that "[f]ees and charges that may be assessed are disclosed on Navy Federal's current *Schedule*

*of Fees and Charges.*" (*Id.* at 4) (emphasis in original). Plaintiff attached to his First Amended Complaint and thereby incorporated Defendant's Schedule of Fees and Charges ("Fee Schedule"). (ECF No. 20-3 (FAC Ex. C)). The Fee Schedule provides that the fee for "Returned checks, deposited or cashed" will be $15.00.[1] (*Id.* at 2). Finally, the Account Agreement contains a notice-and-cure provision providing:

> Neither Member nor Navy Federal may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Agreement or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Agreement, until such party has notified the other party of such alleged breach and afforded the other party a reasonable period after the giving of such notice to take corrective action.

(Account Agreement at 7).

### B.    Procedural History

Plaintiff filed this putative class action in the Superior Court for the County of Los Angeles on June 21, 2023. (ECF No 1-2). On July 21, 2023, Defendant removed the action to this Court on Class Action Fairness Act diversity jurisdiction grounds. 28 U.S.C. § 1332(d); (ECF No. 1 at 4). On August 28, 2023, Defendant filed its first Motion to Dismiss, (ECF No. 13), which the Court granted with leave to amend on October 19, 2023, (ECF No. 19). Plaintiff filed his First Amended Complaint on November 2, 2023. (ECF No. 20). Defendant filed the instant Motion to Dismiss on November 16, 2023. (Mot.). Plaintiff timely opposed on December 13, 2023, and Defendant timely replied on December 22, 2023. (Opp.; Reply).

---

[1] The Court notes that, at least as of November 15, 2023, Defendant appears to have stopped charging RCDC Fees. (Mot. at 21; ECF No. 21-2 (Exhibit A to Declaration of Hakop Stepanyan)).

## II.   LEGAL STANDARD

### A.   Dismissal Under 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). When resolving a motion to dismiss for failure to state a claim under Rule 12(b)(6), courts "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks and citation omitted).

When ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal is affirmed only if it appears beyond doubt that [the] [plaintiff] can prove no set of facts in support of [its] claims which would entitle [it] to relief." *City of Almaty v. Khrapunov*, 956 F.3d 1129, 1131 (9th Cir. 2020) (internal quotation marks and citation omitted). The Court, however, is "not 'required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly

subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)).

## III.   DISCUSSION

### A.   Plaintiff's Compliance With the Notice and Cure Provision

This Court has previously determined that Plaintiff's compliance with the Account Agreement's "notice-and-cure" provision is a "threshold matter" to be determined "before addressing the sufficiency of Plaintiff's Complaint . . . ." *King v. Navy Fed. Credit Union*, No. 223CV05915SPGAGRX, 2023 WL 8250482, at *2–*3 (C.D. Cal. Oct. 19, 2023). Accordingly, the Court again begins with an analysis of "whether [Plaintiff] provided notice to Defendant of the alleged failures that have led to this lawsuit." *Id.* at *2.

Plaintiff now alleges that he called Defendant twice to complain about the RCDC Fee and to attempt to receive a refund, but that Defendant declined to refund the RCDC Fee both times. (FAC ¶ 38.). In its Motion to Dismiss, Defendant contends that "Plaintiff merely called to complain" and that "[e]xpress[ing] dissatisfaction . . . is not notice." (Mot. at 10, 15 (internal quotation marks and citation omitted)). Defendant argues that Plaintiff was obligated to provide "clear and unambiguous" notice in accordance with a three-part test requiring (1) notice of the alleged breach; (2) notice as to how to cure the alleged breach; and (3) a deadline by which the party allegedly in breach must cure the breach. (Mot. at 15) (quoting *Keysight Techs., Inc. v. Mentor Graphics Corp.*, No. C 17-05222 SBA, 2017 WL 7310781, at *6 (N.D. Cal. Sept. 28, 2017)). In response, Plaintiff argues that his phone calls adequately provided Defendant with an opportunity to cure its alleged breach and that Defendant's cited cases, which concern negotiated contracts, should not determine the notice required under Defendant's form contract. (Opp. at 11, 12 n.2). In the alternative, Plaintiff contends that notice would be futile given Defendant's position that its RCDC Fees comply with the Account Agreement. (Opp. at 12–13).

The Court need not reach Plaintiff's futility argument because it agrees that Plaintiff now adequately alleges compliance with the notice-and-cure provision. Defendant's invocation of the three-part test set forth in *Keysight Technologies, Inc. v. Mentor Graphics Corporation* is misplaced. *Keysight Technologies* concerned a software licensing agreement that provided for a perpetual source code license if the licensor both (a) failed to provide contractually-required maintenance support and (b) failed to cure its breach within thirty days of receiving notice from the licensee. *Keysight Techs.*, 2017 WL 7310781, at *1. The agreement also required notice to be given in writing by one of four specified means of service. *Id.* at *2. In contrast, the Account Agreement simply requires accountholders to "notif[y] the other party [here, Defendant] of such alleged breach and afford[] the other party a reasonable period after the giving of such notice to take corrective action." (Account Agreement at 7).

Although Defendant characterizes Plaintiff's phone calls as merely "[e]xpress[ing] dissatisfaction," (Mot. at 15), Plaintiff also alleges that he "attempted to receive a refund of the fee" during these calls, (FAC ¶ 38). Taken in the light most favorable to Plaintiff, *Manzarek*, 519 F.3d at 1031, these allegations suffice to establish that Plaintiff's phone calls "sufficiently identif[ied] the breach at issue such that the breaching party knows what to cure." *IP Glob. Invs. Am., Inc. v. Body Glove IP Holdings, LP*, No. 217CV06189ODWAGR, 2018 WL 5983550, at *5 (C.D. Cal. Nov. 14, 2018), *amended*, No. 217CV06189ODWAGR, 2019 WL 121191 (C.D. Cal. Jan. 7, 2019). Plaintiff also alleges that Defendant declined both of his requests for a refund. (FAC ¶ 38). Although Defendant complains that Plaintiff did not "provide a deadline by which he would file suit," (Mot. at 15–16), the Account Agreement required only that he give Defendant "a reasonable period . . . to take corrective action," (Account Agreement at 7). As Defendant responded to Plaintiff's complaints by declining to issue him a refund, Plaintiff's phone calls evidently gave Defendant sufficient time "to take corrective action." (*Id.*) Defendant, the party that drafted the Account Agreement, could have included more stringent notice-and-cure requirements, but it chose not to. As such, the Court will not impose them now.

### B. Plaintiff's Breach of Contract Claim

Plaintiff alleges that Defendant breached the Account Agreement by its express terms, as well as by violating the duty of good faith and fair dealing. (FAC ¶¶ 54–60). Accordingly, the Court addresses both theories of liability in turn.[2]

#### 1. Express Breach of Contract

Plaintiff contends that Defendant's RCDC Fee charging practices violate the parties' contract. Plaintiff's central argument is that Defendant may charge these fees only in instances where Defendant actually made deposited funds available to accountholders. Under Plaintiff's reading of the contract, Defendant's alleged practice of assessing RCDC Fees "even where no cash has been received by an accountholder and even where no funds have been provided for use by the accountholder" constitutes a breach of contract. (FAC ¶ 21). This theory of liability rests on Plaintiff's interpretation of the contractually undefined term "deposited" as meaning "to deposit an item and to receive use of the funds deposited in exchange." (*Id.*). Defendant disputes Plaintiff's definition of "deposited," which it characterizes as "manufactured," and contends that deposits occur "*before* a member's access to deposited funds." (Mot. at 18) (emphasis added).

The starting point for contract interpretation is the agreement's plain language. *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999) ("Whenever possible, the plain language of the contract should be considered first."). If the language of the contract is clear, the intent of the parties should be determined from the contract itself. *Id.* "An agreement is not ambiguous merely because the parties (or judges) disagree about its meaning." *Abers v. Rounsavell*, 116 Cal. Rptr. 3d 860, 865 (Cal. Ct. App. 2010), *as modified* (Nov. 5, 2010). Likewise, "[t]he fact that a term is not defined

---

[2] The parties, and this Court, agree that California and Virginia law do not meaningfully differ on the elements required to state a breach of contract. *Compare Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011) (stating elements for breach of contract) *with Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004) (same). Accordingly, the Court need not decide what law governs Plaintiff's breach of contract claim.

... does not make it ambiguous." *Powerine Oil Co. v. Superior Ct.*, 118 P.3d 589, 598 (Cal. 2005), *as modified* (Oct. 26, 2005), *as modified* (Oct. 27, 2005).

The Account Agreement and Fee Schedule's use of the term "deposited" does not support Plaintiff's interpretation of the term as capturing only disbursed deposits. The Account Agreement, for example, characterizes deposits as "transactions" by which "money com[es] in" to an account. (Account Agreement at 5). These transactions are then processed by Defendant. (*Id.*). In its Funds Availability Schedule, the Account Agreement lays out "availability timelines" detailing when accountholders "can use the funds from different types of deposits." (*Id.* at 7). The Funds Availability Schedule contemplates that there may be instances in which checks accountholders deposit "will not be paid." (*Id.*). Indeed, the name of the RCDC Fee itself contemplates that deposits will not always result in the disbursement of funds: "*Returned* checks, deposited or cashed," implies that Defendant will return some deposits without cashing them out. (Fee Schedule at 2) (emphasis added). Under Plaintiff's interpretation, by contrast, a returned, undisbursed deposit would not be a deposit at all.

Because the term "deposited" is not "'reasonably susceptible' to the interpretation urged by" Plaintiff, his claim for express breach of contract fails as a matter of law. *S. Cal. Edison Co. v. Superior Ct.*, 44 Cal. Rptr. 2d 227, 232 (Cal. Ct. App. 1995), *as modified on denial of reh'g* (Sept. 7, 1995).

### 2. Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing rests on the grounds that Defendant "[e]vad[ed] the spirit of the bargain and abus[ed] the power to specify terms" by charging RCDC Fees on deposits where it did not make funds available to accountholders. (FAC ¶ 58). It is well established, however, that the covenant of good faith and fair dealing does not prevent a party from exercising its rights under the contract. *Carma Devs. (Cal.), Inc. v. Marathon Dev. California, Inc.*, 826 P.2d 710, 728 (Cal. 1992) ("We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by

an agreement."); *Albright v. Burke & Herbert Bank & Tr. Co.*, 457 S.E.2d 776, 778 (Va. 1995) ("And there can be no breach of [good faith] in enforcing a contractual right.").

Here, the Account Agreement and Fee Schedule expressly contemplate that Defendant may charge the RCDC Fee for deposited checks that are subsequently returned by Defendant. As Defendant charged Plaintiff the RCDC Fee in the exact manner and amount contemplated by the parties' contract, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing fails as a matter of law. Accordingly, the Court GRANTS Defendant's Motion to Dismiss Plaintiff's breach of contract claim without leave to amend.

### C. Plaintiff's Unfair Competition Law Claim

Plaintiff asserts on behalf of himself and a California subclass a claim for violation of California's Unfair Competition Law ("UCL"), which prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Defendant, a federally-chartered credit union, asserts that this claim is preempted by federal law. (Mot. at 22–24).[3]

#### 1. Preemption of State Regulation of Federally-Chartered Credit Unions

The federal government, by virtue of the Supremacy Clause, has the power to preempt state law. U.S. Const., art. VI, cl. 2. "Preemption of state law, by operation of the Supremacy Clause, can occur in one of several ways: express, field, or conflict preemption." *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1178 (9th Cir. 2016). The federal government may preempt state law via statute or regulation. *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152–53 (1982).

---

[3] Defendant also contends that Plaintiff's UCL claim fails because he enjoys an adequate remedy at law and because of the Account Agreement's provision for "Governing Laws and Liability." (Mot. at 20–22, 25–26). As Plaintiff's UCL claim is either preempted or inadequately alleged, the Court need not reach these questions.

-10-

Here, Defendant contends that Plaintiff's UCL claim is preempted by National Credit Union Administration regulations implementing the Federal Credit Union Act ("FCUA") and Truth in Savings Act ("TISA"). In relevant part, the regulations provide:

> A Federal credit union may, consistent with this section, parts 707 and 740 of this subchapter, other federal law, and its contractual obligations, determine the types of fees or charges and other matters affecting the opening, maintaining and closing of a share, share draft or share certificate account. *State laws regulating such activities are not applicable to federal credit unions*.

12 C.F.R. § 701.35(c) (emphasis added). TISA part 707.4, provides, among other things, that federal credit unions' account disclosures "shall include" fee information indicating "[t]he amount of any fee that may be imposed in connection with the account (or an explanation of how the fee will be determined) and the conditions under which the fee may be imposed." 12 C.F.R. § 707.4(b).

In determining whether Defendant is subject to the UCL, this Court "analyze[s] each Unfair Competition Law claim separately" rather than "tackl[ing] the Unfair Competition Law generally vis-a-vis federal [credit union] regulation." *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 722–23 (9th Cir. 2012). Plaintiff's UCL claim has two main components. First, Plaintiff contends that the Defendant's RCDC Fee charging practice was unfair, unlawful, and fraudulent. (FAC ¶ 62). Second, Plaintiff alleges that Defendant made misrepresentations about the RCDC Fees in violation of the UCL. (*Id.* ¶¶ 72–74).

      a) *UCL Liability for Fee Charging Practices*

"[I]t is well established that state law claims regarding a federal credit union's failure to disclose certain fee practices or any perceived unfairness in the fee practices themselves are preempted." *Lambert v. Navy Fed. Credit Union*, No. 1:19-CV-103-LO-MSN, 2019 WL 3843064, at *2 (E.D. Va. Aug. 14, 2019). *See also Whittington v. Mobiloil Fed. Credit Union*, No. 1:16-CV-482, 2017 WL 6988193, at *7 (E.D. Tex. Sept. 14, 2017) ("[A]ny

state laws that attempt to regulate a federal credit union's authority to determine 'the types of fees or charges and other matters affecting the opening, maintaining and closing of a share, share draft or share certificate account' are expressly preempted) (quoting 12 C.F.R. § 701.35(c)); *Vue v. Pentagon Fed. Credit Union*, No. 121CV01063JLTSAB, 2023 WL 6387174, at *12 (E.D. Cal. Sept. 29, 2023) (accord). To the extent Plaintiff's UCL claim concerns Defendant's fee charging practices, this claim expressly conflicts with and is preempted by 12 C.F.R. § 701.35(c).

Plaintiff argues that his claim is not preempted because it is based on guidance promulgated by the Consumer Financial Protection Bureau ("CFPB"), a federal agency. (Opp. at 19–20). As an initial matter, Plaintiff overstates this guidance, which concludes that fees like Defendant's RCDC Fee, when applied "irrespective of the circumstances of the transaction or patterns of behavior on the account," are "*likely* unfair." Bulletin 2022-06: Unfair Returned Deposited Item Fee Assessment Practices, 87 Fed. Reg. 66,940 (Nov. 7, 2022) (emphasis added). Plaintiff also ignores that "supervisory guidance," including guidance issued in CFPB bulletins, "does not have the force and effect of law . . . ." 12 C.F.R. Pt. 1074, App. A. To allow Plaintiff to base a UCL claim on CFPB guidance would confer on that guidance "the force and effect of law" in direct contravention of federal regulations governing that exact guidance. *Id.* Defendant's Motion as to this basis for Plaintiff's UCL claim is therefore GRANTED without leave to amend.

### b) *UCL Liability for Misrepresentations*

Although federal law preempts state regulation of the content of federal credit unions' account disclosures, 12 C.F.R. § 707.4, "the Unfair Competition Law itself does not impose disclosure requirements but merely prohibits statements that are likely to mislead the public." *Gutierrez*, 704 F.3d at 726. As in *Gutierrez v. Wells Fargo Bank, NA*, which concerned the interaction of the UCL with similar regulations promulgated under the National Bank Act, here, "the Unfair Competition Law's prohibition on misleading statements under the fraudulent prong of the statute is not preempted . . . ." *Id.*

To the extent Plaintiff seeks relief on a theory of fraudulent misrepresentation, his claims are subject to heightened pleading requirements under Federal Rule of Civil Procedure 9(b). "In other words, a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020) (internal quotation marks and citation omitted). In his First Amended Complaint, however, although Plaintiff alleges that Defendant "misrepresent[ed] material facts regarding its fee practices" and that "Plaintiff relied on Defendant's misrepresentations" (FAC ¶¶ 72–73), Plaintiff failed to plead *any* facts to substantiate these claims, let alone to "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b). The Court need not accept his conclusory allegations. *Seven Arts Filmed Ent.*, 733 F.3d at 1254. Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects of the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (internal citation omitted). Accordingly, Defendant's Motion as to this basis for Plaintiff's UCL claim is GRANTED with leave to amend.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant's Motion to Dismiss Plaintiff's breach of contract claim with prejudice and DENIES in part Defendant's Motion to Dismiss Plaintiff's UCL claim. Plaintiff shall file a Second Amended Complaint, if any, within fourteen (14) calendar days of the issuance of this

Order. If Plaintiff does not file an amended complaint within this time, the Court will dismiss the case, without prejudice.

**IT IS SO ORDERED.**

DATED: January 26, 2024

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE